OPINION OF THE COURT
Herbert A. Posner, J.
This controversy between a subcontractor (plaintiff) and a general contractor (defendant) arose indirectly as a result of the devastating cutbacks in general construction by the City of New York in the financial crisis of 1975.
Sturdy is a general contractor that specialized in doing construction work for the New York City Transit Authority and other city agencies. In August of 1974 Sturdy received oral notice that it was going to be awarded an alteration and installation of facilities contract for a paint shop at the Coney Island yard of the Transit Authority. In anticipation of the written notice (which came on September 17, 1974 with a "kicker” at the end — "subject to the approval of the Mayor of the City of New York”), Sturdy entered into an oral agreement with Pecker on August 5, 1974 "to furnish and erect the structural steel * * * etc.” for the job. Both parties agreed that since a price rise in steel was anticipated, they would beat the inflationary "clock” by ordering the steel in advance of the final contract. Based upon trade practice and past dealings with each other and the city, this seemed like a prudent business risk. However, who shall pay for the steel if the contract is never finally awarded? The Transit Authority, while approving of the structural steel order (and agreeing to inspect the steel at the plant of the Bethlehem Steel Company), nevertheless, in a letter dated August 14, 1974 disclaimed any responsibility for the cost of the steel should the final contract not be awarded. The steel was manufactured, delivered to Pecker’s facilities and paid for by Pecker. Almost one year later, July 31, 1975, the Transit Authority notified Sturdy that the award was rescinded. The plaintiff invited the defendant to take possession of the steel at its cost. Defendant, however, declined the "invitation”. Whereupon, plaintiff, to mitigate its damages sold the steel at the best price it could obtain. The net loss to Pecker for the entire transaction came (in the court’s opinion) to $4,028. Thus we have the background to this lawsuit.
Plaintiff based its claim to reimbursement upon an oral *1000 agreement at the August 5, 1974 meeting with Sturdy that Sturdy would pay for all steel as billed by Bethlehem in the event a contract was not awarded. Defendant denies there was such an agreement and contends that plaintiff assumed the risk in order to get the job. To bolster its case plaintiff offered for evidence a letter sent to Sturdy on the same day that the oral agreement was made. The first part of the letter confirms the oral agreement to do the job and there is no dispute as to the language or the fact that the letter was received by defendant. The last paragraph contains the nub of the entire case, both factually and legally. The paragraph reads as follows: "In the event you are not awarded a contract on this project, then Sturdy Concrete Corp., is to pay for all steel as billed to us by Bethlehem Steel Co., plus handling and trucking.” Defendant contends that the letter is inadmissable under the Statute of Frauds, (Uniform Commercial Code, § 2-201, subd [1]); and, therefore, the alleged oral agreement for the sale of the steel is unenforceable. Subdivision (1) of section 2-201 reads as follows: "Except as otherwise provided in this section a contract for the sale of goods for the price of $500 or more is not enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought or by his authorized agent or broker. A writing is not insufficient because it omits or incorrectly states a term agreed upon but the contract is not enforceable under this paragraph beyond the quantity of goods shown in such writing.”
Defendant also raised a self-contradictory argument that the oral agreement between the parties was not for the sale of goods but a service contract for the erection of a steel structure. In a case (almost) on "all fours”, the Appellate Division, Third Department, held that "[rjespondent was not contracting simply for the steel beams, but in essence for their erection and installation with the transfer of title to the steel a mere incident of the over-all transaction, a mere accessory to the work and labor to be performed.” (Schenectady Steel Co. v Trimpoli Gen. Constr. Co., 43 AD2d 234, 237.) However, this case is markedly different from Schenectady Steel, in that here the plaintiff is not suing on the entire agreement (which was never performed); but, only on the provision of their alleged agreement governing the financial responsibility for the steel purchased in advance.
*1001 The court finds that this part of the agreement, standing alone, constitutes a contract for the sale of goods.
Plaintiff, however, does not rely on the service contract theory (which is actually in its favor); but, argues that it is entitled to the merchant exception to section 2-201 of the Uniform Commercial Code. Subdivision (2) of section 2-201 states: "Between mrechants if within a reasonable time a writing in confirmation of the contract and sufficient against the sender is received and the party receiving it has reason to know its contents, it satisfies the requirements of subsection (1) against such party unless written notice of objection to its contents is given within ten days after it is received.”
Defendant admits that it did receive the August 5 letter and that it did not give written notice of its objection. Defendant contends, however, that (1) it is not a merchant (though it concedes plaintiff is) under subdivision (2) of section 2-201 of the Uniform Commercial Code; and, (2) that its general manager called plaintiff on the phone to object to the paragraph containing the alleged agreement regarding the purchase of the steel.
THE LEGAL ISSUE — IS STURDY A "MERCHANT”?
Subdivision (1) of section 2-104 of the Uniform Commercial Code defines "merchant” as follows: " 'Merchant’ means a person who deals in goods of the kind or otherwise by his occupation holds himself out as having knowledge or skill peculiar to the practices or goods involved in the transaction or to whom such knowledge or skill may be attributed by his employment of an agent or broker or other intermediary who by his occupation holds himself out as having such knowledge or skill.” " 'Between merchants’ means in any transaction with respect to which both parties are chargeable with knowledge or skill of merchants.” (Uniform Commercial Code, § 2-104, subd [3].) Defendant would have us apply the narrow, ancient concept of a merchant (originating in the "law merchant”) as one whose "occupation is buying and selling” (Lish v Compton, 547 P2d 223, 226 [Utah]). Plaintiff, naturally, opts for a liberal interpretation, and cites: (1) that portion of the statutory definition of "merchant” which refers to "knowledge or skill”, and (2) that portion of the cross-examination of defendant’s general manager in which he conceded that Sturdy was familiar with the steel business and with the work of steel subcontractors.
*1002 Statutory definitions are supposed to give the reader a sense of confidence by supplying apparently precise meaning. However, nowhere are the difficulties of definition more apparent than in subdivisions (1) and (3) of section 2-104 of the Uniform Commercial Code. The language in these definitions of a "merchant” and "between merchants” has been variously described as ambiguous,[1] awkward,[2] odd,[3] difficult to construe,[4] and leading to conclusions which do not make much sense.[5]
This court believes that while Sturdy cannot be described as a steel merchant, since it is not in the business of buying and selling steel; nevertheless, within the broad language of subdivisions (1) and (3) of section 2-104, it is a merchant. A merchant question can only be answered by the facts in each case. During cross-examination of defendant’s general manager, he was asked: "It’s fair to say, then, is it not, that you are familiar with steel and how it’s used in construction projects and how it’s ordered and what steel contractors do with it before they deliver it to you?” His answer was: "Yes, I would say so.”
THE FACTUAL ISSUE — DID STURDY AGREE TO BUY THE STEEL?
Plaintiff contends that if the court finds that defendant is a "merchant”, for purposes of subdivision (2) of section 2-201 of the Uniform Commercial Code, then the letter of August 5, 1974 was a "partially integrated” contract (even though never signed by the defendant); and, the defendant may not contradict its terms by parol evidence. This rationale is a common error, that even the courts have misconstrued. Ever since Trafalgar Sq. v Reeves Bros. (35 AD2d 194), the lower courts have construed subdivision (2) of section 2-201 that the failure to respond in writing within 10 days means that the terms of the writing are automatically accepted. Until recently, this misconception was so well entrenched that a trial court characterized it as "well settled law that by retaining the contract herein without written objection for a period of more than ten days, [one] accepted said contract”. (Matter of Beydoun, NYLJ Sept. 13, 1977, p 7, col 2.)
*1003 The Court of Appeals, in Matter of Marlene Inds. (45 NY2d 327), finally straightened this issue out. The court said that the statute merely makes an oral contract for the sale of goods enforceable against a party who signed nothing, if that party received a written confirmation of the existing oral agreement and does not give written notice of objection to its contents within 10 days after it is received. Failure to object in writing within 10 days does not signify assent to the terms of the writing; it merely deprives the recipient of the opportunity to raise the Statute of Frauds as a defense. Therefore it is for the trier of the facts to determine whether there was or was not an oral contract.
In this case, based upon all the evidence introduced by both sides, the court finds that the plaintiff has sustained its burden by a fair preponderance of the credible evidence. The court does not believe the testimony of defendant’s general manager that he called plaintiffs office (after receiving the August 5, 1974 letter) and told plaintiffs agents that defendant does not accept the terms of the last paragraph. The court finds that defendant did agree orally to purchase the steel from plaintiff; and, accordingly awards plaintiff a judgment for $4,028, with costs, disbursements and interest from July 31, 1975.

. Professor Kripke’s remarks in Hearing Before Enlarged U.C.C. Editorial Board (Jan. 27, 1951 6 Business Law, 164, 183).

. Lattin, The Law of Sales in the Uniform Commercial Code (15 Ohio St L J 12, 21).

. Waite, The Proposed New Uniform Sales Act (48 Mich L Rev 603, 618).

. Merchant Provisions in the Uniform Commercial Code-Sales (39 Ga L J 130, 131).

. Bender’s UCC Service, Duesenberg & King, Sales and Bulk Transfers (§ 1.02).