**The BOESE–HILBURN COMPANY,**
**Appellant,**

v.

**DEAN MACHINERY COMPANY,**
**Respondent.**

**No. WD 30990.**

Missouri Court of Appeals,
Western District.

March 30, 1981.

As Modified On Court's Own Motion
May 4, 1981.

Application for Transfer Denied
June 8, 1981.

---

522

Robert A. Babcock, Timothy L. Brake, Kansas City (Margolin & Kirwan, Kansas City, of counsel), for appellant.

Steven G. Emerson, Morris, Larson, King, Stamper & Bold, Kansas City, for respondent.

Before CLARK, P. J., and DIXON and SOMERVILLE, JJ.

SOMERVILLE, Judge.

An action was brought by The Boese-Hilburn Company (Boese-Hilburn) against Dean Machinery Company (Dean Machinery) for damages for breach of an express warranty. The warranty relied upon, which was contained in a "Purchase Order" issued by Boese-Hilburn, was inconsistent with one of the terms of a "Quotation" submitted by Dean Machinery for the sale of certain equipment. A jury was waived, judgment was entered in favor of Dean Machinery, and Boese-Hilburn pursued this appeal.

The issue on appeal may be tersely framed by posing the following question. What language and what documents constituted the contractual terms between Boese-Hilburn and Dean Machinery?

Article 2 of the Uniform Commercial Code [1] applies to "transactions in goods". U.C.C. § 2–102. The answer to the issue posed above lies in U.C.C. § 2–207, which reads as follows:

"§ 2–207. *Additional Terms in Acceptance or Confirmation*

(1) A definite and seasonable expression of acceptance or a written confirmation which is sent within a reasonable time operates as an acceptance even though it states terms additional to or different from those offered or agreed upon, unless acceptance is expressly made conditional on assent to the additional or different terms.

(2) The additional terms are to be construed as proposals for addition to the contract. Between merchants such terms become part of the contract unless:

(a) the offer expressly limits acceptance to the terms of the offer;

(b) they materially alter it; or

(c) notification of objection to them has already been given or is given within a reasonable time after notice of them is received.

(3) Conduct by both parties which recognizes the existence of a contract is suf-

---

1. This state has adopted the Uniform Commercial Code and the corresponding statutory sections are found in Chapter 400, RSMo 1978.

For sake of uniformity and convenience, all citations will be to the Uniform Commercial Code rather than Chapter 400, RSMo 1978.

ficient to establish a contract for sale although the writings of the parties do not otherwise establish a contract. In such case the terms of the particular contract consist of those terms on which the writings of the parties agree, together with any supplementary terms incorporated under any other provisions of this Act."

Having made the above commitment, certain common law principles of contract law no longer control, and the facts presented must be reconciled, step-by-step, with various provisions of U.C.C. § 2–207. Although this dispositional approach may appear to be a convoluted and unduly protracted process, anything short of doing so would defile the integrity of U.C.C. § 2–207. Uniform Commercial Code Comments, decisions from other jurisdictions, and text authorities will be looked to for guidance because of an absence of Missouri cases construing U.C.C. § 2–207.

Hopefully, a look at the historical background from which U.C.C. § 2–207 evolved will bring the overriding issue in this case into sharper focus. Under the common law "mirror image" rule, acceptance of an offer had to mirror the terms of the offer and any deviation therefrom converted a purported acceptance of an offer into a rejection and a counteroffer on the terms of the purported acceptance. It subsequently became evident that the "mirror image" rule neither adequately nor realistically dealt with the "battle of forms" which progressively besieged the marketplace. U.C.C. § 2–207 was conceived as a solution where "transactions in goods" were involved. Due to its wording, critics abound who cast doubt as to whether U.C.C. § 2–207 satisfactorily achieved its designed purpose. It has variously been described as a "murky bit of prose", *Southwest Engineering Co. v. Martin Tractor Co.*, 205 Kan. 684, 473 P.2d 18, 25 (1970); as "not too happily drafted", *Roto-Lith, Ltd. v. F. P. Bartlett & Co.*, 297 F.2d 497, 500 (1st Cir. 1962); as "one of the most important, subtle and difficult in the entire Code, and well it may be said that the product as it finally reads is not altogether satisfactory", Dusenberg & King,

Sales and Bulk Transfers under the Uniform Commercial Code (Vol. 3, Bender's Uniform Commercial Code Service) § 3.03, at 3–12 (1969); and that courts will "need more than a scorecard to distinguish the players", Note, Contracts: Sales of Goods: Acceptance of Offer: Additional or Different Terms: Section 2–207, U.C.C.; Section 84–a, N.Y. Personal Property Law, 46 Cornell L. 308, 316 (1961). Much of the language which prompted this barrage of criticism will subsequently be confronted. Despite the criticism, U.C.C. § 2–207 applies to this case and authoritatively controls its disposition. Having reached this conclusion, it becomes necessary to (1) set forth a resume of what are deemed to be the controlling facts and (2) then correlate them with the salient provisions of U.C.C. § 2–207.

Dean Machinery, a Caterpillar dealer, learned that a building was to be constructed to accommodate the Providence—St. Margaret Health Center. Upon acquiring this information, it checked to see if any of the Caterpillar engines it handled met any of the project specifications. Although project specifications for a stand-by electric generating system were based on 600 KW Waukesha diesel engines, competitive bidding was invited and a Caterpillar "equal" was indicated as acceptable. Possessed with this information, Dean Machinery sent a "Quotation" on four (4) Caterpillar D 348 diesel engines and necessary "allied equipment" to a list of "acceptable" electrical subcontractors, one of whom was Boese-Hilburn. Insofar as here pertinent, the "Quotation" stated that "We [Dean Machinery] propose to furnish" four (4) Caterpillar D 348 diesel engines and necessary allied equipment for the price of "$347,114 net F.O.B. job site", "[d]elivery will be approximately 8 to 10 months after approval", and that "[t]he equipment we have proposed above may or may not meet the specifications as written and is subject to engineers approval." Ensuing conferences between authorized representatives of Boese-Hilburn and Dean Machinery effected substitutions for certain necessary "allied equipment"

and a reduction of the overall price set forth in the "Quotation", all of which were confirmed by Dean Machinery, either orally or in writing. Boese-Hilburn, in reliance upon Dean Machinery's "Quotation", as amended, submitted a bid to J. E. Dunn Construction Company, general contractor on the Providence—St. Margaret Health Center project, for installation of the stand-by electric generating system. Boese-Hilburn, after being advised by the general contractor that it was the successful low bidder, prepared, on its printed forms, a four page, "Purchase Order" directed to Dean Machinery. The "Purchase Order" was prepared by Boese-Hilburn's purchasing agent and, insofar as here pertinent, contained the following: general reference was made to Dean Machinery's "Quotation", as amended, and "four 600 K.W. Generator sets w/switching and paralleling equip." were ordered; the following clause, written in longhand, prominently appeared on the first page, *"Supplier warrants that he will provide equipment to meet specifications* for the sum of—$287,590.00 (emphasis added and the same is hereafter referred to as the warranty clause); and these words, "Accepted subject to above:", also written out in longhand, appeared on the last page immediately following all other handwritten provisions.

The warranty clause was inserted by reason of specific instructions given by Boese-Hilburn's vice-president and "chief estimator". Boese-Hilburn was concerned that the Caterpillar D 348 diesel engines might not meet project specifications notwithstanding oral assurances from Dean Machinery to the effect "don't worry about it" and "no sweat".

After the "Purchase Order" was prepared by Boese-Hilburn's purchasing agent, the manager of Dean Machinery's "Power Division" went to the office of Boese-Hilburn, read the "Purchase Order" over and, immediately under the phrase "Accepted subject to above:" affixed the following signature, "Dean Machinery Co. By: Charles E. Vorbeck". The "Purchase Order" was signed on each page by Boese-Hilburn's purchasing agent. No issue has been raised as to the authority of either agent to bind their respective principals.

The project engineer ultimately rejected the Caterpillar D 348 diesel engines because they did not meet project specifications. Boese-Hilburn ended up substituting Waukesha engines, at additional cost, to perform the subcontract. This litigation was precipitated by a controversy between Boese-Hilburn and Dean Machinery as to who should bear the loss occasioned by failure of the Caterpillar D 348 diesel engines to meet project specifications.

The trial court found and held, as evidenced by its findings of fact, conclusions of law and judgment, that Dean Machinery's "Quotation", as amended, constituted an offer, that Boese-Hilburn's "Purchase Order" constituted an acceptance, and that the "Quotation", as amended, constituted the controlling contractual terms between the parties. More to the point, they reflected that the trial court concluded that the following provision contained in the "Quotation", "[t]he equipment we have proposed above may or may not meet the specifications as written and is subject to engineers approval", was a controlling contractual term between the parties. Although entirely silent on the subject, they convincingly reflect that the trial court further concluded that the following clause contained in the "Purchase Order", "Supplier warrants that he will provide equipment to meet specifications . . .", was not a part of the contract between the parties.

■ Dean Machinery's "Quotation", as amended, constituted an offer sufficient to invite an acceptance by Boese-Hilburn, and if the latter had simply responded with an unequivocal acceptance the terms of the "Quotation" would have constituted the terms of the contract between the parties. However, Boese-Hilburn did not do so. Instead, Boese-Hilburn's response to Dean Machinery's "Quotation" was a "Purchase Order" which contained a term inconsistent with a particular term of the "Quotation". More specifically, the "Purchase Order" contained a clause that "Supplier warrants

that he will provide equipment to meet specifications ...", while the "Quotation" contained a clause that the "equipment ... may or may not meet the specification as written and is subject to engineers approval."

■ U.C.C. § 2–207(1) provides that "[a] definite and seasonable expression of acceptance ... operates as an acceptance even though it states terms additional to or different from those offered or agreed upon, unless acceptance is expressly made conditional on assent to the additional or different terms." Although no Missouri case has been found holding that a "Quotation" constitutes an offer and a "Purchase Order" constitutes an acceptance in the context of U.C.C. § 2–207(1), well reasoned cases from other jurisdictions do so. *Falcon Tankers, Inc. v. Litton Systems, Inc.*, 355 A.2d 898, 904 (Del.Super.1976); and *Earl M. Jorgensen Co. v. Mark Construction, Inc.*, 540 P.2d 978, 981 (Haw.1975). Fairly construed, the "Purchase Order" in the instant case was a "definite and seasonable expression of acceptance" within the purview of U.C.C. § 2–207(1). The fact that the "Purchase Order" contained a term additional to or different from a term in the "Quotation" did not preclude the "Purchase Order" from constituting an acceptance of the "Quotation" (offer), as U.C.C. § 2–207(1) expressly provides that "[a] definite and seasonable expression of acceptance ... operates as an acceptance even though it states terms additional to or different from those offered ...". This court recognizes that an acceptance containing "terms additional to or different from those offered" may operate as a rejection and transform the acceptance into a counteroffer in toto under U.C.C. § 2–207(1) if the "acceptance is expressly made conditional on assent to the additional or different terms." As held in *Falcon Tankers, Inc. v. Litton Systems, Inc., supra*, 355 A.2d at 906, under U.C.C. § 2–207(1), "the result of the offeree making his acceptance expressly conditional on the offeror's assent is the transformation of offeree's document into a traditional counter-offer."

Judicial interpretation of the language "expressly made conditional" contained in U.C.C. § 2–207(1) ranges across a broad spectrum. *Roto-Lith, Ltd. v. F. P. Bartlett & Co., Inc., supra, Construction Aggregates Corp. v. Hewitt-Robins, Inc.*, 404 F.2d 505 (7th Cir. 1968), *cert. denied* 395 U.S. 921, 89 S.Ct. 1774, 23 L.Ed.2d 238 (1969), and *Dorton v. Collins & Aikman Corporation*, 453 F.2d 1161 (6th Cir. 1972), illustrate the breadth of this judicial spectrum. *Roto-Lith, Ltd.* is representative of one end of the spectrum—"a response which states a condition materially altering the obligation solely to the disadvantage of the offeror is an 'acceptance * * * expressly * * * conditional on assent to the additional * * * terms.'" *Roto-Lith, Ltd. v. F. P. Bartlett & Co., supra*, 297 F.2d at 500. *Construction Aggregates Corp.* is representative of the middle of the spectrum—an acceptance "'predicated on the following clarifications, additions or modifications to the order'" is expressly conditional. *Construction Aggregates Corp. v. Hewitt-Robins, Inc., supra*, 404 F.2d at 509. *Dorton* is representative of the other end of the spectrum—"an acceptance must be *expressly* conditional on the offeror's *assent* to ... [additional or different terms] ... [and] [t]hat the acceptance is predicated on the offeror's assent must be 'directly and distinctly stated or expressed rather than implied or left to inference.'" *Dorton v. Collins & Aikman Corporation, supra*, 453 F.2d at 1168. Suffice it to say, the three cases just mentioned appear to cover the whole spectrum of approaches for determining what constitutes an acceptance "expressly made conditional" within the contemplation of U.C.C. § 2–207(1).

■ As previously noted, if Boese-Hilburn's acceptance had been "expressly made conditional" on Dean Machinery's assent to the warranty clause inserted in the "Purchase Order", the acceptance would have operated as a rejection of the "Quotation" and become a counteroffer. U.C.C. § 2–207; and *Falcon Tankers, Inc. v. Litton Systems, Inc., supra*. The wording of the warranty clause in the "Purchase Order",

"Supplier warrants that he will provide equipment to meet specifications", standing alone, failed to connote that the acceptance was "expressly made conditional" on Dean Machinery's assent to the warranty clause. This court acknowledges that if it adopted the approach taken in *Roto-Lith, Ltd. v. F. P. Bartlett & Co., Inc., supra*, it would follow that Boese-Hilburn's acceptance was "expressly made conditional" on Dean Machinery's assent to the warranty clause, and the acceptance would have operated as a rejection of the "Quotation" and become a counteroffer. However, this court believes that the drafters of the Uniform Commercial Code, by use of the language "expressly made conditional", clearly intended that an acceptance which merely implied that it was "conditional" on an offeror's assent to a different or additional provision was insufficient to convert an acceptance into a rejection and a counteroffer. Otherwise, *many of the problems which prompted the drafting and adoption of U.C.C. § 2–207* would not be alleviated and the specter of the "mirror image" rule would still haunt the marketplace. Whether inclusion of the warranty clause in the "Purchase Order" falls within the middle position taken by *Construction Aggregates Corp. v. Hewitt-Robins, Inc., supra*, is the next analytical step. This court concludes that it does not because there is no language in the "Purchase Order" which imports that Boese-Hilburn's acceptance was "predicated" on Dean Machinery's assent to the warranty clause. The next analytical step is to determine whether the warranty clause falls within the extreme position taken by *Dorton v. Collins & Aikman Corporation, supra*. The warranty clause, viewed separately, clearly falls short of "expressly", "distinctly" and "directly" stating that acceptance was "conditional" on Dean Machinery's assenting to the warranty clause contained in the "Purchase Order". Moreover, no other language in the "Purchase Order" purports to do so.

*One other aspect of the "Purchase Order"* should be considered in connection with whether the acceptance was "expressly made conditional" on Dean Machinery's assent to the warranty clause. The following was written out in longhand on the last page of the "Purchase Order", "Accepted subject to above:", and Dean Machinery's signature was affixed immediately below by its authorized agent. Fairly construed, the language "Accepted subject to above:", notwithstanding use of the word "Accepted", was descriptive of the purpose for which Dean Machinery affixed its signature to the "Purchase Order", rather than an expression attributable to Boese-Hilburn that its acceptance was "expressly made conditional" within the contemplation of U.C.C. § 2–207(1). The language just mentioned, and the signing of the "Purchase Order" by Dean Machinery, will receive additional attention later on.

As previously noted, the criteria relied on in *Roto-Lith, Ltd. v. F. P. Bartlett & Co, Inc., supra*, for determining whether Boese-Hilburn's acceptance was "expressly made conditional" on Dean Machinery's assent to the warranty clause, has been rejected. Moreover, as the "Purchase Order" fails to meet the criteria relied on in either *Construction Aggregates Corp. v. Hewitt-Robins, Inc., supra*, or *Dorton v. Collins & Aikman Corporation, supra*, it is unnecessary for disposition of this case to decide which of the two approaches reflected thereby should be adopted.

A recapitulation, at this juncture, is in order: (1) Dean Machinery's "Quotation" was an offer, and (2) Boese-Hilburn's "Purchase Order" was a "definite and seasonable" acceptance not "expressly made conditional", and operated as an acceptance even though it contained a term additional to or different from that contained in Dean Machinery's offer.

Paragraph (2) of U.C.C. § 2–207 reads as follows:

"(2) The additional terms are to be construed as proposals for addition to the contract. Between merchants such terms become part of the contract unless:

(a) the offer expressly limits acceptance to the terms of the offer;

(b) they materially alter it; or

(c) notification of objection to them has already been given or is given within a reasonable time after notice of them is received."

U.C.C. § 2–207(2) differentiates between transactions involving a non-merchant and transaction between merchants. See 1 Williston, Sales, § 7–5(5) (1973). Dean Machinery and Boese-Hilburn were "merchants" as defined in U.C.C. § 2–104(1).[2] *Cement Asbestos Products v. Hartford Acc. & Indem.*, 592 F.2d 1144, 1148 (10th Cir. 1979); *A & G Const. Co., Inc. v. Reid Brothers Logging Co., Inc.*, 547 P.2d 1207, 1216, n. 15 (Alaska 1976); and *Pecker Iron Works, Inc. v. Sturdy Concrete Co.*, 96 Misc.2d 998, 410 N.Y. S.2d 251, 253–54 (1978).

■ According to the second sentence of U.C.C. § 2–207(2), where, as here, both parties are merchants, "additional" terms "become part of the contract" unless one of the exceptions set forth in subparagraphs (a), (b) or (c) arises. Reference to both "additional" or "different" terms in U.C.C. § 2–207(1) vis-a-vis reference solely to "additional" terms in U.C.C. § 2–207(2) has been a prolific source of controversy. One point of view holds that "additional" as used in U.C.C. § 2–207(2) precludes application of U.C.C. § 2–207(2) to "different" terms. *Southern Idaho Pipe & Steel Co. v. Cal-Cut Pipe*, 98 Idaho 495, 567 P.2d 1246, 1253–54 (1977). See also J. White and R. Summers, Uniform Commercial Code, 2d ed. 1980, pp. 27, 29–30. Another point of view holds that "additional" as used in U.C.C. § 2–207(2) includes both "additional" and "different" terms and that U.C.C. § 2–207(2) applies to both "additional" and "different" terms. *Steiner v. Mobil Oil Corp.*, 20 Cal.3d 90, 141 Cal.Rptr. 157, 569 P.2d 751 (banc 1977). See also 1 Williston, Sales, § 7–5(8), pp. 291–92. This court adopts the well reasoned point of view advanced by *Steiner v. Mobil Oil Corp., supra*: "We conclude that the applicability of section 2207, subdivision (2), should not turn upon a

characterization of the varying terms of an acceptance as 'additional' or 'different'. First, Uniform Commercial Code comment 3 specifically states that '[w]hether or not additional *or different* terms will become part of the agreement depends upon the provisions of subsection (2).' (Italics added; see also UCC com. 2.) Second, the distinction between 'additional' and 'different' terms is ambiguous. Since an offer's silence with respect to a particular issue may indicate an intent to adopt the code's gap-filling provisions, even an acceptance term which at first glance appears to be plainly 'additional' is at least arguably 'different.' (See *Air Products & Chem., Inc. v. Fairbanks Morse, Inc.* (1973), 58 Wis.2d 193, 206 N.W.2d 414, 424.) Third, the distinction between additional and different terms serves no clear purpose. If additional and different terms are treated alike for purposes of section 2207, subdivision (2), an offeror does not, as some contend, lose 'the ability to retain control over the terms of his offer.' (Dusenberg & King, *supra*, at p. 3–37.) Under section 2207, subdivision (2), if the offeror wishes to retain such control, he may do so by framing his offer so that it 'expressly limits acceptance to the terms of the offer . . . .' (§ 2207, subd. (2)(a).)" Id. at 759–60, n.5.

It is patent that the following clause contained in the "Quotation", "[t]he equipment we have proposed above may or may not meet the specification as written and is subject to engineers approval", nor any of the other terms of the "Quotation", "expressly" limited acceptance to the terms of the "Quotation" within the proviso set forth in U.C.C. § 2–207(2)(a). The clause just quoted was cautionary and sought to place any risk attendant upon failure of the Caterpillar D 348 diesel engines to meet specifications upon Boese-Hilburn, a risk which Boese-Hilburn was unwilling to take. Consistent with its refusal to do so, Boese-Hilburn inserted the warranty clause, a "different" term, in its "Purchase Order".

---

**2.** " 'Merchant' means a person who deals in goods of the kind or otherwise by his occupation holds himself out as having knowledge or skill peculiar to the practices of goods involved in the transaction or to whom such knowledge

or skill may be attributed by his employment of an agent or broker or other intermediary who by his occupation holds himself out as having such knowledge or skill."

The next analytical step is to determine whether the warranty clause materially altered the "Quotation" within the proviso set forth in U.C.C. § 2–207(2)(b). Comment 4 of the Uniform Commercial Code Comment to U.C.C. § 2–207 provides a number of examples deemed to constitute "material" alterations, among which are clauses "negating such standard warranties as that of merchantability or fitness for a particular purpose in circumstances in which either warranty normally attaches." Basic logic compels the conclusion that if a clause negating a standard warranty constitutes a "material" alteration, conversely, inclusion of a warranty clause where none previously existed and was expressly disclaimed likewise constitutes a "material" alteration. Comment 4, *supra*, purports to equate clauses which constitute "material" alterations with those which "result in surprise or hardship if incorporated without express awareness by the other party." The warranty clause inserted by Boese-Hilburn in its "Purchase Order" was the antithesis of the clause contained in Dean Machinery's "Quotation" that the equipment "may or may not meet the specification as written" and was "subject to engineers approval", and the shifting of this risk resulted in a "hardship" to Dean Machinery as evidenced by this litigation. In the frame of reference of "surprise or hardship", the warranty clause was a "material" alteration. As the warranty clause constituted a "material" alteration, it is academic whether Dean Machinery previously or within a reasonable time after notice of its inclusion notified Boese-Hilburn of its objection to the warranty clause in accordance with U.C.C. § 2–207(2)(c).

Although the warranty clause inserted in the "Purchase Order" materially altered the "Quotation", the "Purchase Order" retained the legal status of an acceptance of the "Quotation" even though accompanied by a counterproposal that Dean Machinery warranted that the equipment would meet specifications. U.C.C. § 2–207(2). As recognized in *Falcon Tankers, Inc. v. Litton Systems, Inc., supra*, 355 A.2d at 904, under U.C.C. § 2–207 "a response agreeing to something less than identical terms may be treated as an acceptance in part and a counter-offer in part."

All that has previously been said channels into Comment 3 of the Uniform Commercial Code Comment to U.C.C. § 2–207, which affords an analytical basis for final resolution of the issue presented on appeal. Comment 3, *supra*, directs itself to U.C.C. § 2–207(2): "Whether or not additional or different terms will become part of the agreement depends upon the provisions of subsection (2). If they are such as materially to alter the original bargain, they will not be included *unless expressly agreed to by the other party*. If, however, they are terms which would not so change the bargain they will be incorporated unless notice of objection to them has already been given or is given within a reasonable time." (Emphasis added.) Thus, the warranty clause inserted by Boese-Hilburn in its "Purchase Order", being a "material" alteration, did not constitute a contractual term between the parties unless Dean Machinery expressly agreed thereto. Even though the parties were "merchants", the warranty clause did not automatically become a contractual term because it materially altered the "Quotation". Therefore, the warranty clause was a counterproposal for a change in the contract between the parties regarding who would bear the risk that the Caterpillar D 348 diesel engines might not meet project specifications. Dean Machinery's signature on the last page of the "Purchase Order", affixed immediately below the language "Accepted subject to above:", fairly construed, was an expression of assent on Dean Machinery's behalf to accept Boese-Hilburn's counterproposal. Therefore, the warranty clause contained in the "Purchase Order" became a term of the contract between the parties replacing the provision in the "Quotation" that the machinery might or might not meet project specifications. U.C.C. § 2–207(2).

The perimeter of appellate review of this court tried case is drawn by *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976).

Although the trial court, on the basis of substantial evidence found that Dean Machinery's "Quotation" was an offer and Boese-Hilburn's "Purchase Order" was an acceptance, it misapplied the law in holding that the warranty clause inserted in the "Purchase Order" was not a part of the contract between the parties. Doing so cannot be reconciled with the provisions of U.C.C. § 2–207.

U.C.C. § 2–213(1)(a) provides that "[a]ny affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty and the goods shall conform to the affirmation or promise." The evidence in this case discloses that the Caterpillar D 348 diesel engines did not "conform" to the warranty clause which was a binding contractual term between the parties in that they did not meet project specifications.

Judgment reversed and cause remanded to the trial court with instructions to find in favor of Boese-Hilburn and against Dean Machinery for breach of warranty, to ascertain the amount of damages which Boese-Hilburn is entitled to recover against Dean Machinery, and to enter judgment accordingly.

All concur.