**CHAMPION TURF, INC., Appellant,**

v.

**RICE, PAPUCHIS CONSTRUCTION COMPANY and Howard Golf, Inc., Respondents.**

**No. WD 46570.**

Missouri Court of Appeals,
Western District.

April 20, 1993.

Motion for Rehearing and/or Transfer to Supreme Court Denied June 1, 1993.

**324**

Dale Lee Beckerman, Kansas City, for appellant.

Anthony J. Romano, Kansas City, for respondents.

Before SMART, P.J., and KENNEDY and FENNER, JJ.

FENNER, Judge.

Appellant, Champion Turf, Inc. (Champion), appeals the judgment of the trial court denying its claim against respondents, Rice, Papuchis Construction Company and Howard Golf, Inc. Respondent Howard Golf, Inc. is a division of Rice, Papuchis Construction Company. The respondents are hereinafter collectively referred to as Howard Golf.

This action arises out of a renovation project at Swope Memorial Golf Course (the "Project"). Howard Golf was the general contractor on the Project for the City of Kansas City, Missouri. As a part of Howard Golf's initial bid on the Project, Howard Golf was to supply a sprinkler system from a supplier by the company name of Rainbird. After Howard Golf's bid was accepted by the City, the City requested that Howard Golf change the irrigation system from the Rainbird System to a Toro System.

Howard Golf discussed the possibility of changing the irrigation system with Champion. Howard Golf gave Champion a copy of the Rainbird bid and advised Rainbird that Howard Golf would like to change to a Toro system per the City's request if it could be done for the same cost which was approximately $195,000. As a result, Champion submitted a proposal to substi-

tute a Toro system which was understood to be no more costly than the Rainbird system, as shown by the evidence. Champion's proposal consisted of a cover letter from Gary Traxon, a representative of Champion, and an attached list of unit price and parts for the various components for a total price of $195,973.15. Thereafter, Howard Golf executed a written purchase order for the Toro System which order acknowledged the quoted price of $195,-973.15. The unit price and parts list supplied by Champion was referenced in and attached to the purchase order.

Champion proceeded to supply the Toro irrigation system to Howard Golf and Champion was paid the total sum of $199,-408.72. Champion claimed that it was not paid in full and brought suit against Howard Golf. Champion claimed in its petition that it was owed a balance for equipment and supplies provided to Howard Golf in the amount of $5,144, which was attributable to unpaid sales tax, late charges in the total amount of $8,115.80 through June 25, 1991, and attorney's fees.[1] The trial court, sitting without a jury, ruled against Champion.

On appeal, Champion argues that the trial court erred in denying its claim because it supplied equipment for which it was not fully paid. Champion argues that there was no contract between the parties which relieved Howard Golf of paying the balance due on equipment and supplies and, further, that pursuant to a credit agreement entered into between the parties, Champion was entitled to late charges on the unpaid balance and attorney's fees for collection. Howard Golf argues that the parties entered into a fixed price contract which was completely performed by Howard Golf. It argues further that it has no obligation for late charges pursuant to

contract or otherwise and that Champion is not entitled to attorney's fees.

■ Appellate review of this court tried case is in accordance with *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976). Accordingly, the judgment of the trial court is to be affirmed unless it is not supported by substantial evidence, it is against the weight of the evidence or it erroneously declares or applies the law. *Id.* at 32. Conflicts in the evidence are for the trial court to resolve and the facts and all reasonable inferences therefrom must be taken in accordance with the result reached by the trial court. *Arnett v. Johnson*, 689 S.W.2d 836, 838 (Mo.App.1985).

■ Missouri has adopted the Uniform Commercial Code under Chapter 400, RSMo 1986.[2] Article 2 of Chapter 400 applies to transactions in goods. In the case at bar, the equipment in question was within the definition of "goods" pursuant to section 400.2–105(1). Accordingly, the provisions of the U.C.C. control the issues of contract formation in the case at bar.

Section 400.2–204(1) provides that "[a] contract for sale of goods may be made in any manner sufficient to show agreement, including conduct by both parties which recognizes the existence of such a contract." Further in regard to the formation of contracts, section 400.2–201 provides, in pertinent part, as follows:

(1) Except as otherwise provided in this section a contract for the sale of goods for the price of five hundred dollars or more is not enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought or by his authorized agent or broker....

1. Champion claimed at trial that it was owed a total of $192,605.33 for equipment and supplies provided to Howard Golf, plus sales tax in the amount of $11,948.19, for a total of $204,553.52, excluding late charges and attorney's fees. Howard Golf maintained that under the agreement of the parties, Howard Golf was not required to pay any sales tax, that there were no late charges due and that they had no liability for attorney's fees. Howard Golf argued that it

had paid its obligation to Champion in full. The discrepancy in the original price and the amount Champion claimed due at trial, exclusive of sales tax, late charges and attorney fees was attributable to changes in the equipment supplied which charges are not in dispute between the parties.

2. All statutory references are to RSMo 1986.

(2) Between merchants if within a reasonable time a writing in confirmation of the contract and sufficient against the sender is received and the party receiving it has reason to know its contents, it satisfies the requirements of subsection (1) against such party unless written notice of objection to its contents is given within ten days after it is received.

When both parties are merchants, section 400.2–201(2) eliminates the signature requirement of section 400.2–201(1). *Howard Constr. Co. v. Jeff-Cole Quarries, Inc.*, 669 S.W.2d 221, 226 (Mo.App.1983).

■ A merchant is a person who deals in goods of the kind or otherwise by his occupation holds himself out as having knowledge or skill peculiar to the practices or goods involved in the transaction or to whom such knowledge or skill may be attributed by his employment of an agent or broker or other intermediary who by his occupation holds himself out as having such knowledge or skill. Section 400.2–104(1).

■ The evidence supports a finding that both Howard Golf and Champion are merchants. Champion dealt specifically in sprinkler systems and Howard Golf dealt in golf course construction work including sprinkler systems.

We find this court's opinion in *Boese-Hilburn Co. v. Dean Machinery Co.*, 616 S.W.2d 520 (Mo.App.1981), a case which dealt with a transaction in goods between two merchants under the U.C.C., to be controlling in the case at bar. In *Boese-Hilburn* an electrical subcontractor, as a buyer of equipment, brought suit against Dean Machinery Co. to enforce an express warranty provision allegedly contained within what Boese-Hilburn argued to be the parties' contract. *Id.* at 522. The facts reflect that Dean Machinery sent a "Quotation" for four (4) Caterpillar diesel engines to a list of electrical subcontractors, one of whom was Boese-Hilburn. *Id.* at 523. The "Quotation" in its pertinent part stated that, "We [Dean Machinery] propose to furnish four (4) Caterpillar D 348 diesel engines and necessary allied equipment for the price of $347,114 net F.O.B. job site,"

and that "[t]he equipment we have proposed above may or may not meet the specifications as written and is subject to engineers approval." *Id.* at 523.

Boese–Hilburn, in reliance upon Dean Machinery's "Quotation," submitted a bid to the general contractor on the project in question. *Id.* at 524. After being advised that it was the successful low bidder, Boese–Hilburn prepared and sent a "Purchase Order" to Dean Machinery containing a general reference to Dean Machinery's "Quotation" and "four 600 K.W. Generator sets with switching and paralleling equipment" were ordered, along with the addition of warranty language. *Id.* at 524.

The court said:

Dean Machinery's "Quotation," as amended, constituted an offer sufficient to invite an acceptance by Boese–Hilburn, and if the latter had simply responded with an unequivocal acceptance the terms of the "Quotation" would have constituted the terms of the contract between the parties.

*Id.* at 524.

■ Accordingly, under the U.C.C., Champion's proposal and the subsequent purchase order by Howard Golf constituted an offer and acceptance which established the terms of the contract between the parties. Under the terms of the contract there was no provision for Howard Golf to be responsible to pay sales tax on the equipment and supplies contracted for over and above the agreed contract price of $195,973.15. The evidence supports the trial court's finding that Howard Golf had fully paid for the equipment and supplies furnished by Champion pursuant to their contract and that Howard Golf was not obligated to pay any additional sum for sales tax.

In regard to the late charges and attorney's fees, Champion argues that even if its proposal and Howard Golf's purchase order constituted a contract, the parties had a separate credit agreement which obligated Howard Golf to pay late charges and attorney's fees. Given the trial court's finding that Champion had been paid in

full, Champion was not entitled, under the evidence and the finding of the trial court, as affirmed herein, to late charges or attorney's fees for collection even if the credit agreement was otherwise binding.

The judgment of the trial court is affirmed.

All concur.

