Filed 11/13/15  Digital Document Technologies v. Friedberg & Parker CA3

# NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| DIGITAL DOCUMENT TECHNOLOGIES, LLC, | C077910 |
| Cross-complainant and Appellant, | (Super. Ct. No. 34-2012-00123046-CU-BT-GDS) |
| v. | |
| FREIDBERG & PARKER, LLP, | |
| Cross-defendant and Respondent. | |

This appeal arises from a dispute between a law firm, respondent Freidberg & Parker, LLP (Freidberg), and a company that provides technical electronic services, appellant Digital Document Technologies, LLC (DDT).

It is undisputed that Freidberg asked DDT to process electronic media for use in litigation, and that Freidberg had asked DDT to do other work before.  This time, DDT's e-mails with Freidberg at least arguably suggested the work would result in a modest charge, but when the work was done, DDT charged over $50,000.  After a court trial

involving expert testimony as to the reasonable value of DDT's services, the trial court awarded DDT just over $8,000, but denied interest or attorney fees.

On appeal, DDT faults the trial court for not finding that Freidberg was a "merchant" under the Uniform Commercial Code (UCC), and not understanding that DDT's operative pleading embraced a UCC contract claim, which, if sustained, would have entitled DDT to an award of attorney fees, costs, and interest.[1] As we will explain, DDT has not demonstrated prejudice from any arguable error. Accordingly, we shall affirm.

## BACKGROUND

Freidberg sued DDT--originally sued as Mirror Imaging Document Solutions-- eventually filing a second amended complaint alleging DDT overcharged Freidberg when it charged more than $50,000 to process electronic media for Freidberg's use in litigation.

DDT's amended cross-complaint alleged common counts, seeking payment of its invoice plus interest and attorney fees.[2] DDT typed onto the Judicial Council form complaint an allegation that the claim was "Pursuant to the attached contract/statement between the parties by and through their prior course of dealing as between merchants." The current as well as two prior invoices--presumably, to show the prior course of dealing between the parties--were attached.

---

[1] Further undesignated statutory references are to the California Uniform Commercial Code.

[2] "A common count is proper whenever the plaintiff claims a sum of money due, either as an indebtedness in a sum certain, or for the reasonable value of services, goods, etc., furnished. It makes no difference that the proof shows the original transaction to be an express contract, a contract implied in fact, or a quasi-contract." ( 4 Witkin, Cal. Procedure (5th ed. 2008) Pleading, § 554, p. 682 (Witkin).) "[T]he only essential allegations are (1) the statement of indebtedness in a certain sum, (2) the consideration, i.e., goods sold, work done, etc., and (3) nonpayment." (*Id*., § 557, pp. 685-686.)

After Freidberg dismissed its second amended complaint, a two-day court trial on DDT's amended cross-complaint ensued. The record does not include a reporter's transcript of the trial, or a settled statement, so our understanding is taken from the minute orders, trial briefs, and statement of decision.

DDT's trial brief alleged the dispute "involves the production/delivery of goods by and between merchants under the" UCC. Freidberg alleged services--not goods--were at issue, and that DDT's invoice was unconscionable.

The trial court accepted posttrial briefing. DDT outlined a common counts theory, relied in part on the UCC to seek a contract recovery, and in part sought quantum meruit.[3] Freidberg asserted no contract existed, and the invoice was unconscionable.

The tentative statement of decision observed no UCC theory was pleaded. DDT objected, contending it had pleaded a UCC contract theory. The difference, according to DDT, was that if the bill were unconscionable, and the trial court awarded quantum meruit rather than contract damages, DDT still would be entitled to attorney fees and interest at the purported "contract" rate.[4]

The final statement of decision noted that the trial court had confirmed with counsel that DDT was "proceeding on a common count theory and not breach of contract." The trial court found Freidberg was not a "merchant" and awarded DDT quantum meruit, also finding that if the UCC applied, no attorney fees or interest would be available, for lack of a course of dealing.

_____

[3] " 'Where, without express contract, one performs services for another with that other's knowledge, the services being of a character usually charged for, and the other person does not dissent but benefits by the services, a promise to pay the reasonable value of such services is implied.' " (*Spinelli v. Tallcott* (1969) 272 Cal.App.2d 589, 595.)

[4] Interest is not normally awarded on quantum meruit claims, although the court has discretion to award interest if the claim is based on a contract. (Civ. Code, § 3287, subd. (b); see *George v. Double-D Foods, Inc.* (1984) 155 Cal.App.3d 36, 46-48.)

3

The trial court found DDT provided services such as "document scanning and [copying], the provision of color copies . . . digital conversion, and certain electronic discovery applications." "From time to time" DDT had performed "a variety of these services" for Freidberg. In the prior instances, the work involved fewer than 15,000 pages and the largest bill was less than $3,000. In this transaction, Freidberg gave DDT two DVDs relevant to a case that could hold large amounts of data, but Freidberg did not know "the extent of the content" thereon. By e-mail, a DDT employee clarified that Freidberg wanted DDT to extract files, repair files, and convert files, Freidberg asked for a page count, and about a week later the DDT employee replied that the page count was over 500,000, and indicated DDT could provide a hard drive with relevant files on it for $99; a Freidberg employee agreed. Freidberg's two trial experts estimated the work should have been billed at around $6,900 to $7,500, not the $50,000+ claimed on DDT's invoice.

The trial court found: "The emails and phone calls between the parties, while establishing an agreement to proceed on the work detailed, do not discuss price or terms or attorney fees or interest." Nor did the invoice itself amount to a contract. Accordingly, a quantum meruit recovery for a quasi-contract, rather than contract recovery for an implied-in-fact contract, was appropriate. (See *Maglica v. Maglica* (1998) 66 Cal.App.4th 442, 455 [distinguishing a " 'quasi-contractual' quantum meruit theory" with "an implied-in-fact contract" theory of recovery].)

The trial court awarded DDT the higher amount testified to by Freidberg's experts plus sales tax, for a total of $8,090.95, but also awarded Freidberg its costs of $4,299.70. DDT timely appealed from the ensuing judgment.

4

# DISCUSSION

## I

### *Application of the UCC*

A. *Standard of Review*

"Because [appellant] provides us only the original trial court file, and fails to provide any reporter's transcript of the trial preceding the judgment from which he appeals, we must treat this as an appeal 'on the judgment roll.' [Citations.] Therefore, . . . we ' "must conclusively presume that the evidence is ample to sustain the [trial court's] findings." ' [Citation.] Our review is limited to determining whether any error 'appears on the face of the record.' " (*Nielsen v. Gibson* (2009) 178 Cal.App.4th 318, 324-325.)

" 'In a judgment roll appeal every presumption is in favor of the validity of the judgment and any condition of facts consistent with its validity will be presumed to have existed rather than one which will defeat it.' " (*Estate of Kievernagel* (2008) 166 Cal.App.4th 1024, 1031.)

B. *Analysis*

DDT contends the UCC entitled it to attorney fees and interest based on the following chain of reasoning: (1) Both parties were "merchants" under the UCC. (2) Under the UCC, an invoice creates a contract if it is not disputed within 10 days. (§ 2201, subd. (2).) (3) Freidberg did not timely dispute DDT's invoice. (4) Therefore, DDT and Freidberg had a binding contract for the invoice price.

As we shall explain, even if the first point is correct--which we discuss for completeness but need not decide--the second point is wrong as a matter of law.

DDT suggests Freidberg's merchant status is a legal question to be reviewed de novo. We disagree. As in other factual contests, in determining whether a party is a merchant under the UCC we review the facts for substantial evidence and ascertain whether those facts support the judgment. (See *Prenger v. Baker* (Iowa 1995) 542

5

N.W.2d 805, 808 ["whether a party . . . is a merchant is a question of fact"]; *Smith v. General Mills, Inc.* (1998) 291 Mont. 426, 430 [968 P.2d 723, 726] ["mixed question of law and fact"]; *Vince v. Broome* (Miss. 1983) 443 So.2d 23, 28 ["a question of fact for the jury's determination" after legally correct instructions]; 10, Williston on Contracts (4th ed. 2011) § 29:25, pp. 801-803.)

DDT had to prove Freidberg was a merchant under the UCC, which, for purposes of the prompt-dispute rule, "means a person who deals in goods of the kind or otherwise by his occupation holds himself out as having knowledge or skill peculiar to the practices or goods involved in the transaction or to whom such knowledge or skill may be attributed by his employment of an agent or broker or other intermediary who by his occupation holds himself out as having such knowledge or skill."  (§ 2104, subd. (1).) The trial court found Freidberg "a civil law firm, asked a specialized vendor to extract documents" from media for use during discovery or trial, and DDT "has provided the Court with no case that establishes that a law firm under these, or any circumstances, is a 'merchant' for purposes of" the UCC.

On appeal, DDT contends "A merchant . . . is simply someone in business and if he is transacting with another business, a transaction between merchants exists."  Thus, a civil law firm, in DDT's view, must be a merchant.  As authority, DDT relies entirely on a jury instruction that defines "merchant" in part in four ways, the first of which is "one who engages in a trade, business, or a type of commerce to such an extent that [he/she/it] has or should have knowledge of common business practices."  (2 Cal. Forms of Jury Instruction (Matthew Bender 2012) Commercial Code Sales Contracts, No. MB300H.06, p. 3H-14.)  Although DDT fails to provide authority explaining how the instruction squares with the statute, we have found authority that fills in the gap.  According to the official comments to the UCC:  "The special provisions as to merchants appear only in this Article and they are of three kinds.  Sections . . . dealing with the statute of frauds, firm offers, confirmatory memoranda and modification rest on normal business practices

6

which are or ought to be typical of and familiar to any person in business. *For purposes of these sections almost every person in business would, therefore, be deemed to be a 'merchant'* under the language 'who . . . by his occupation holds himself out as having knowledge or skill peculiar to the practices . . . involved in the transaction . . . ' since *the practices involved in the transaction are non-specialized business practices such as answering mail.* In this type of provision, banks or even universities, for example, well may be 'merchants.' " (U. Com. Code (A.L.I. 2014-2015 ed.) Sales, com. to § 2-104, pp. 55-56, italics added.) Thus, "a purchaser can be considered a merchant where the purchaser is a 'business professional as opposed to a casual or inexperienced seller or buyer,' [citation], and the purchase involves a type of goods related and necessary to the business or occupation of the purchaser." (*Ready Trucking, Inc. v. BP Exploration & Oil Co.* (2001) 248 Ga.App. 701, 704 [548 S.E.2d 420, 423-424].)

Under this authority, Freidberg, as a civil law firm, might well be a merchant for some purposes, and be subject to the prompt-dispute rule.

Section 2201, subdivision (1) establishes a statute of frauds, and section 2201, subdivision (2) establishes one of the exceptions, as follows: "Between merchants if within a reasonable time a writing in confirmation of the contract and sufficient against the sender is received and the party receiving it has reason to know its contents, it satisfies the requirements of subdivision (1) against the party unless written notice of objection to its contents is given within 10 days after it is received." Thus, this section's prompt-dispute rule's "only effect . . . is to take away from the party who fails to [timely dispute a writing] the defense of the Statute of Frauds; the burden of persuading the trier of fact that a contract was in fact made orally prior to the written confirmation is unaffected." (U. Com. Code, *supra*, com. to § 2-201, p. 61; see 1 Williston, *supra*, § 2-3, pp. 127-128 ["Some courts have erroneously held that failure to object to a signed confirmatory memorandum renders its terms binding]; see also *id.* at pp. 129-130.)

7

DDT misinterprets the prompt-dispute rule, arguing that its application here converts Friedberg's lack of timely objection into acquiescence to the terms of the agreement as interpreted by DDT. Although, as we have explained, the rule--if applicable--would have overcome Freidberg's affirmative statute of frauds defense, that is all it would have done. To prevail on a contract theory, the document that is not promptly disputed must, either of itself or combined with other evidence, establish the terms of a contract. (See, e.g., *Cook Grains, Inc. v. Fallis* (1965) 239 Ark. 962, 963 [395 S.W.2d 555, 556] [if a merchant, a party "would be liable on the alleged contract because he did not, within ten days, give written notice that he rejected it," which would undermine his statute of fraud defense]; *Pecker Iron Works, Inc. v. Sturdy Concrete Co.* (1978) 96 Misc.2d 998, 1000- 1002 [410 N.Y.S.2d 251, 252-254] [similar].)

In this case, DDT's invoice merely lists items claimed to be owed and is not in the form of a contract. After explaining the differences between the prior and current transactions between the parties, the trial court found the invoice did not create a contract, that is, it was not "a sequence of conduct . . . between the parties . . . that is fairly to be regarded as establishing a common basis of understanding for interpreting their expressions and other conduct." (§ 1303, subd. (b); *C9 Ventures v. SVC-West, L.P.* (2012) 202 Cal.App.4th 1483, 1497-1498 (*C9 Ventures*).) The trial court also found the communications between DDT and Freidberg did not address "price or terms or attorney fees or interest." Because this is a judgment roll appeal and DDT bore the burden of proof at trial (see Evid. Code, § 500), the findings to the effect that terms critical to establishing a contract were not proven is unassailable.

Moreover, the statute of frauds as to which the prompt-dispute rule pertains applies to "a contract for the sale of goods for the price of . . . $500 or more." (§ 2201, subd. (1).) Under the UCC, "goods" means "all things (including specially manufactured goods) which are movable at the time of identification to the contract for sale other than

8

the money in which the price is to be paid, investment securities (Division 8) and things in action." (§ 2105, subd. (1).) Thus, services are not goods.

The trial court found Freidberg sought "computer document extraction" services from DDT. It is true DDT's invoice included a $99 charge for a hard drive, but the vast bulk of the claimed charges were for services. These include repairing corrupt files at an hourly rate, and four separate charges at a per-page rate for: converting files to another format, adding Bates numbering, adding optical character recognition, and exporting e-mail data to another format. Although these later four charges each exceed $500, they are not "goods," such as the cost of printing copies or the like.

In considering a "mixed" contract for goods and services, we must look to the "predominate" object of the contract. (1 Williston, *supra*, p. 124, & fn. 12.) "In determining whether the agreement was for the sale of goods or the provision of services, ' "we must look to the 'essence' of the agreement. When service predominates, the incidental sale of items of personal property[] does not alter the basic transaction." ' " (*Wall Street Network, Ltd. v. New York Times Co.* (2008) 164 Cal.App.4th 1171, 1186; see *C9 Ventures*, *supra*, 202 Cal.App.4th at p. 1494.)

Under this test, it has been held that a contract for making copies of a motion picture, or audio tapes, is not a contract for the sale of goods, even where there is a per-unit charge for performing the service of duplicating the relevant media. (See *Filmservice Laboratories, Inc. v. Harvey Bernhard Enterprises, Inc.* (1989) 208 Cal.App.3d 1297, 1305-1306.) We find that reasoning applicable here, where the "essence" of what Freidberg asked for, and what DDT supplied, was DDT's technical expertise in retrieving, repairing, and modifying electronic data for use in litigation.[5]

---

[5] DDT argued in the trial court that the fact sales tax was charged and the hard drive it produced is a tangible item that was prepared in order to be admitted into evidence at a trial demonstrates that goods were at issue. But as we have explained, the appropriate

9

Accordingly, DDT has failed to show that the UCC applied to this transaction.

In a subsidiary argument, DDT contends that after the trial court determined the invoice price was unconscionable, the trial court still should have awarded "reasonable attorneys fees, costs, and interest" because those *other* terms of the purported contract between merchants were not shown to be unconscionable. (See Civ. Code, § 1670.5, subd. (a).) We reject this claim, because it rests on the view that the trial court was obligated to find an enforceable contract existed, a view which we do not accept.

## II

### *Pleading Breach of Contract*

On appeal, DDT insists that the trial court misunderstood the breadth of its common counts claim, which it contends embraced a theory of breach of contract. We agree with DDT that pleading both a generic common counts claim and a specific breach of contract claim may be done, inter alia, when, "The two counts, though based on the same cause of action, are designed to seek different remedies on distinct legal theories." (4 Witkin, Cal. Procedure, *supra*, § 568, p. 693.) This may be done prophylactically, so that if one theory fails, recovery may be had on the other. (See, e.g., *Zint v. Topp Industries, Inc.* (1960) 184 Cal.App.2d 240, 243 [no express contract found, but quantum meruit awarded on "contract implied . . . for services rendered"].)

The tentative statement of decision recites that the parties agreed the appropriate common count was quantum meruit, the case did not involve an implied-in-fact contract, and DDT had not pleaded a claim under the UCC. DDT objected, in part contending that the trial court misunderstood the scope of the complaint. DDT argued it was not required to plead a separate UCC count, and that the typed addition to the form complaint, referencing "the attached contract/statement between the parties . . . as between

---

legal test is to discern the *predominate purpose* of the transaction, as Freidberg correctly argued in the trial court.

10

merchants," adequately alleged a contract for the sale of goods under the UCC;[6] further, the trial court incorrectly viewed common counts and quantum meruit "as interchangeable terms." DDT also contended the invoice established an enforceable written contract (by application of the prompt-dispute rule, a theory we have already discussed and rejected in Part I *ante*).

However, the final statement of decision recites that "At the conclusion of the trial, the Court confirmed with [DDT's] counsel on the record that he was in fact proceeding on a common count theory *and not breach of contract*." (Italics added.) This is ambiguous because, as DDT correctly points out, a common count theory can be breach of contract. But because this is a judgment-roll appeal, DDT cannot refute the trial court's finding that DDT disclaimed reliance on its theory of breach at the end of trial. (See *Estate of Kievernagel*, *supra*, 166 Cal.App.4th at p. 1031.)[7]

Moreover, DDT's pleading practice undermines its contention on appeal that it consistently pursued a breach of contract theory in the trial court. The standard Judicial Council form for "COMPLAINT—Contract" includes boxes to be checked to specify whether the claim is a "Breach of Contract" or "Common Counts," or "Other." (Judicial Council Forms, form PLD-C-001, p. 2.) DDT used this form, but checked *only* the box specifying that the claim was for common counts. Consistent with this election, DDT attached the appropriate companion form for "Cause of Action—Common Counts," but

---

[6] In its briefing on this point, DDT misquotes its cross-complaint so that it references an "attached contract" rather than an "attached contract/statement." DDT's redaction is misleading because the only purported written contract was DDT's invoice, which would only be treated as a contract if the UCC applied as DDT argued. The presence of the alternative classification of the attached invoice as a "statement" is significant here.

[7] The fact DDT objected to one part of the tentative decision (to the effect that the parties agreed quantum meruit was the correct recovery) does not equate to an objection to the trial court's later statement that DDT disclaimed its theory of breach, contrary to its suggestion.

11

did not attach the separate form for "Cause of Action—Breach of Contract." (See *id.*, forms PLD-C-001(1) & 001(2).) Thus, taking DDT's form complaint at face value, because DDT refrained from checking the box to allege a breach of contract, and refrained from attaching the appropriate form to allege a breach of contract, it is difficult to find it *did* plead a breach of contract. We perceive no good reason for DDT *not* to plead both theories by checking the correct boxes and attaching the correct forms, if it really intended to pursue both theories of recovery.[8]

A statement of decision "covers only issues litigated in the case." (*Colony Ins. Co. v. Crusader Ins. Co.* (2010) 188 Cal.App.4th 743, 750.) Based both on DDT's counsel's presumed disclaimer at the end of trial as described by the statement of decision, and our examination of the pleadings, we cannot on this record find the trial court erred by concluding a theory of breach of contract was not at issue.

Moreover, whether or not a contract theory was properly pleaded or disclaimed, because the trial court found *on the facts* that neither the invoice nor the communications between the DDT and Freidberg employees established the price or other significant terms, DDT's purported theory of breach would have failed in any event. Accordingly, any error by the trial court in construing DDT's amended cross-complaint provides no basis for reversal. (See Cal. Const., art. VI, § 13; Code Civ. Proc., § 475; *Mayes v. Sturdy Northern Sales, Inc.* (1979) 91 Cal.App.3d 69, 83.)

_____

[8] We also note that DDT did not move to amend its cross-complaint to conform to proof. (See Code Civ. Proc., § 469; 5 Witkin, *supra*, Pleading, § 1211, pp. 643-645.)

## DISPOSITION

The judgment is affirmed.  Appellant DDT shall pay respondent Freidberg's costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(1).)

_____/s/_____

Duarte, J.

We concur:

_____/s/_____

Hull, Acting P. J.

_____/s/_____

Murray, J.