**David C. MILEY, Sr., and April P. Miley, his wife, Plaintiffs,**

**v.**

**HARMONY MILL LIMITED PARTNERSHIP, a corporation of the State of Delaware, Defendant.**

**Civ. A. No. 91–592–JLL.**

United States District Court, D. Delaware.

Sept. 24, 1992.

**966**

Edward T. Ciconte of Ciconte, Roseman & Wasserman, Wilmington, Del., for plaintiffs.

James F. Kipp and Robert K. Pearce of Trzuskowski, Kipp, Kelleher & Pearce, P.A., Wilmington, Del., for defendant.

## MEMORANDUM OPINION

LATCHUM, Senior District Judge.

### I. INTRODUCTION

Defendant, Harmony Mill Limited Partnership, seeks an order for summary judgment against plaintiffs David C. Miley, Sr. and April P. Miley, his wife, pursuant to Rule 56 of the Federal Rules of Civil Procedure. The plaintiffs commenced this action to recover damages for alleged injuries sustained when Mr. Miley fell in the shower in an apartment owned by defendant. Plaintiffs base their claim on five separate theories of liability: (1) common-law negligence, (2) strict liability in tort, (3) breach of warranties for merchantability and fitness for purpose, (4) breach of the warranty of habitability, and (5) a breach of the Delaware landlord/tenant code which plaintiffs allege constitutes negligence *per se*.[1] For the reasons set forth below, the Court will grant summary judgment for the defendant on all counts except the claim of common-law negligence.

The plaintiffs, David C. Miley, Sr. and his wife, April P. Miley, are citizens of Florida. The Defendant, Harmony Mill Limited Partnership, is a corporation of the State of Delaware. The amount in controversy exceeds fifty-thousand dollars. The Court's jurisdiction is based on diversity of citizenship in accordance with 28 U.S.C. § 1332. (Docket Item ["D.I."] 1.)

### II. FACTS

On June 7, 1990, Mr. Miley slipped in the shower in his home in the Harbor Club Apartments in New Castle County, Delaware. As Mr. Miley fell his elbow hit the glass shower door which shattered upon impact causing lacerations and other injuries to his arm. At the time of the accident, the Harbor Club Apartments were owned and operated by the defendant, Harmony Mill Limited Partnership ("Harmony Mill") who, in turn, leased Apartment 2D to Mr. Miley. (D.I. 1 and 5.)

The glass that shattered was "annealed glass"; it was not what is called alternately, tempered, treated or safety glass. The Harbor Club Apartments were constructed in 1968–69. The glass in the shower door was installed at the time of construction of the building and has not been modified or repaired in any way since. In the more than 20 years since the shower door was installed there have never been any complaints recorded concerning either the shower door in question or other shower doors in the Harbor Club Apartments nor has any evidence been offered that there have ever been any reported accidents involving the glass in the doors. (D.I. 19 at A–17 to A–23.)

It is presently undisputed by the parties that the annealed glass in the shower door met the specifications required by the 1965 Building Officials Conference of America

---

1. Plaintiff's wife has also joined this suit with a claim for loss of consortium.

(BOCA) Basic National Building Code (hereinafter "BOCA National Building Code" or "BOCA Building Code") which was the Code in effect at the time the building was constructed [2]; that the use of annealed glass for shower doors has been prohibited by the BOCA National Building Codes in effect after 1970; that the BOCA National Building Code states that it is not intended to have retroactive effect except where it so specifies and that annealed glass is not an area in which the BOCA National Building Code specifies that it operates retroactively.[3]

## III. THE STANDARD OF REVIEW

Rule 56(c) of the Federal Rules of Civil Procedure provides that a party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The appropriate inquiry is whether there is a need for a trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). "In other words, [are] there any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.*

In a motion for summary judgment it is the party seeking summary judgment who bears "the initial responsibility of informing the Court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any,' which it believes

demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). As stated above, the Court finds that there are triable issues of fact concerning the common-law negligence claim but that no factual issues exist regarding the strict liability, breach of warranties for merchantability and fitness for purpose, breach of warranty of habitability or negligence *per se* claims. Thus, defendant is entitled to a judgment in its favor on these latter claims as a matter of law.

## IV. THE STRICT LIABILITY CLAIM

In Count Two of their Complaint plaintiffs allege that the apartment owned and operated by defendant was

> unsafe and defective in that the shower door in the bathroom was made of untempered glass, a latent defect which existed at the time the premises was rented to Plaintiffs, and which Plaintiff did not and could not, by the exercise of reasonable care, have perceived ...

> The defective condition of the premises and failure to warn or discover the defect by Defendant was a substantial factor in bringing about the injury to Plaintiff, causing Defendant to be strictly liable in tort to Plaintiff.

(D.I. 5 at 2–3.) The State of Delaware has declined to impose the doctrine of strict tort liability for defective products. *Cline v. Prowler Indus. of Md., Inc.*, 418 A.2d 968 (Del.1980). Thus, plaintiffs have failed to state a claim upon which relief could be granted under Delaware law. However, plaintiffs argued both in their brief in oppo-

---

**2.** Various editions of the BOCA National Building Code have been adopted by ordinance in New Castle County, thus becoming the building code for New Castle County pursuant to Chapter 5, § 5–1 of the New Castle County Code.

**3.** The 1987 BOCA National Building Code (the code in effect at the time of the accident) and the present 1990 BOCA National Building Code provide in relevant part:

SECTION 103.3 EXISTING STRUCTURES
103.1 Continuation of Existing use: The legal use and occupancy of any structure existing on the date of adoption of this code, or for

which it has been heretofore approved, shall be permitted to continue without change, except as is specifically covered in this code, the property maintenance or fire prevention codes listed in Appendix A, or as is deemed necessary by the code official for the general safety and welfare of the occupants and the public.

Every edition of the code adopted since 1970 (the year in which the Code first prohibited the use of annealed glass in shower doors) contained this provision concerning pre-existing uses.

sition to defendant's motion for summary judgment and at oral argument that this Court should adopt the doctrine of strict liability utilized by the California courts for landlord/tenant situations. (D.I. 22 at 16.) To support their suggestion, the plaintiffs cited the case of *Becker v. I.R.M. Corp.*, 38 Cal.3d 454, 213 Cal.Rptr. 213, 698 P.2d 116 (1985). In *Becker*, the California Supreme Court extended the doctrine of strict liability, which was already well developed in the California products liability case-law, to the area of landlord/tenant law. However, Delaware, unlike California, has expressly rejected the doctrine of strict liability for the sale of goods and has never utilized it in the landlord/tenant area. Thus, this Court, were it to entertain plaintiffs' suggestion, would not be extending an already often utilized theory of liability, but would rather be creating a completely new cause of action.

This Court declines that invitation. Both the Legislature of Delaware and the Supreme Court of Delaware have expressly rejected the doctrine of strict tort liability for sales of goods. In *Cline v. Prowler Indust.*, 418 A.2d 968 (Del.1980), the Delaware Supreme Court held that it was the intent of the Delaware Legislature in adopting the U.C.C. with its implied warranties to preempt the development of the doctrine of strict liability for sales of goods and thus concluded that:

> [I]t is not within the power of this Court to adopt the doctrine of strict tort liability in sales cases due to the preeminence of the Uniform Commercial Code in the sales field of the law. If more fair and complete protective relief is to be forthcoming for consumers injured by defective products they have purchased, it must come from the General Assembly.

*Id.* at 980. Thus, since both the legislature and the courts of Delaware have rejected the doctrine of strict liability for sales of goods, this Court will not consider extending an expressly rejected doctrine of liability to a new area of practice, which already has sufficient statutory coverage under the Delaware Landlord/Tenant Code. If such

a legal change is to occur it should emanate from the General Assembly.

Furthermore, the Delaware Superior Court has refused to allow tort damages for breaches of the warranty of habitability,[4] thus signaling to this Court that the Delaware judiciary is not on the verge of imposing strict tort liability in an area of law heretofore governed by contract principles.

## V. THE BREACH OF WARRANTIES OF MERCHANTABILITY AND FITNESS FOR PURPOSE

▇▇▇ Plaintiffs charge in Count Three of their Complaint that defendant breached implied warranties of merchantability and fitness for purpose.

> 22. At all times herein, the Defendant, its servants, agents and employees, impliedly warranted to Plaintiff and his family that the premises so rented was merchantable, fit and safe for the ordinary use intended....
>
> 24. The Defendant, its servants, agents and employees, breached its warranties in that the shower was not fit for the purpose for which it was intended, was not of merchantable quality, was unsafe for use, was of unsafe design and was unreasonably dangerous and unfit.

(D.I. 5.) Implied warranties of merchantability and fitness for purpose apply only to products; they do not apply to real estate lease agreements. These implied warranties are codified in 6 *Del.C.* §§ 2–314 and 2–315, which is Delaware's adoption of Article 2 of the Uniform Commercial Code. Article 2 of the U.C.C. only controls contracts for the sale of goods. By its own terms the code excludes the leasing of an apartment from being considered a sale of goods. Goods are defined in Article 2 as follows:

> "Goods" means all things (including specially manufactured goods) which are movable at the time of identification to the contract for sale other than the money in which the price is to be paid, invest-

---

4. *See* discussion *infra* Part VI.

ment securities (Article 8) and things in action....

6 *Del.C.* § 2–105(1). Contract for sale and sale are defined as follows:

In this Article unless the context otherwise requires "contract" and "agreement" are limited to those relating to the present or future sale of goods. "Contract for sale" includes both a present sale of goods and a contract to sell goods at a future time. A "sale" consists in the passing of title from the seller to the buyer for a price (Section 2–401). A "present sale" means a sale which is accomplished by the making of the contract.

6 *Del.C.* § 2–106(1). The U.C.C. thus not only clearly limits the application of implied warranties of merchantability and fitness for purpose to sales of goods, but it defines a sale of goods in a manner which precludes a residential lease agreement from being considered as such since the residential lease agreement contains neither a sale nor a good.

The Delaware Supreme Court has also specifically held that Delaware's adoption of Article 2 of the U.C.C. was not intended to cover lease situations but was instead limited to the sale of goods. *Martin v. Ryder Truck Rental, Inc.*, 353 A.2d 581 (Del.1976).

### VI. THE BREACH OF THE WARRANTY OF HABITABILITY

In Count Four of their Complaint, plaintiffs allege that defendant has breached its warranty of habitability. While Delaware has acknowledged an implied warranty of habitability pursuant to 25 *Del.C.* § 5303(a), *Hand v. Davis*, Del.Super., C.A. No. 87C–OC–6, 1990 WL 96583, Ridgely, J. (June 8, 1990); *Brown v. Robyn Realty Co.*, 367 A.2d 183 (Del.Super.Ct.1976), the only damages which Delaware acknowledges for a breach of that warranty are contract damages. *Hand v. Davis, supra.* In *Hand v. Davis*, Judge Ridgely summarized the available remedies as follows:

The warranty of habitability under the code [Delaware landlord-tenant code 25 *Del.C.* § 5303(a) ] posits that the landlord

promises to provide a rental unit that complies [with] the specific code provisions. In exchange, the tenant promises to pay a periodic rent. When the landlord breaches this warranty, the tenant's remedies are governed by contract principles of the benefit of the bargain.... The code allows for several methods of calculating the lost benefit of the bargain ... [including] retroactive rent abatement ... [and] costs of alternative housing. No Delaware case has held a landlord or owner liable for personal injuries for a breach of implied warranty, absent negligence.... Moreover, the law in this state before the enactment of the code allowed tort damages only upon a showing of ordinary negligence. There is no expressed intent in the code to repeal these common-law negligence standards.

*Id.* at 9. Since Delaware law grants only contract damages and does not permit tort liability for breaches of the implied warranty of habitability defendant is entitled to summary judgment on this count as well.

### VII. VIOLATION OF THE DELAWARE LANDLORD/TENANT CODE AS NEGLIGENCE PER SE

In Count Five of plaintiffs' Complaint, they allege that defendant has breached the Landlord/Tenant Code of Delaware and that such a breach constitutes negligence *per se*. Although, plaintiffs fail to state in their complaint what section of the code they are alleging defendant has breached, plaintiffs' answering brief clearly refers to 25 *Del.C.* § 5303(a). It is settled law in Delaware that a breach of the landlord/tenant code does not give rise to tort liability unless the section of the code violated requires a definite act or sets a specific standard of conduct. *Hand v. Davis*, Del.Super., C.A. No. 87C–OC–6, 1990 WL 96583 Ridgely, J. (June 8, 1990); *Loss & Miller, P.A. v. Foulk Road Medical Center, Inc.*, Del.Super., C.A. No. 77C–AU–33, Christie, J. (March 16, 1981) (A–38–A–40); *Rosenberg v. Valley Run Apartment Associates*, Del.Super., C.A. No. 1143, 1973, Walsh, J. (April 29, 1976) (A–35–A–37). The Delaware Superior Court

has ruled that the sections of the code that plaintiffs enumerate in their complaint do not give rise to a cause of action for tort damages in the absence of negligence. *Hand v. Davis, supra.* Thus, plaintiffs' claim of negligence *per se* is precluded as a matter of law. Plaintiffs appear to have conceded this point, since in their answering brief they state:

> Plaintiff is not positing that the mere violation of the statute gives rise to a separate cause of action. Rather the Plaintiff is stating that he has a cause of action based upon a violation of the statute because he has combined that violation with a showing of negligence.

(D.I. 22 at 14.) This Court thus will grant summary judgment for the defendant on the plaintiffs' claim of negligence *per se* based on an alleged violation of the landlord/tenant code, since even if the plaintiffs were to prove that defendant breached the particular section of the code in question,[5] plaintiffs only remedy would be in contract. In order to collect the tort damages which they are seeking, plaintiffs must prove that the defendant was negligent. Thus, this Court concludes that the only triable issue of fact remaining is the issue of common-law negligence.

## VIII. THE COMMON–LAW NEGLIGENCE CLAIM

■ In Count One of their Complaint plaintiffs allege that the:

> accident and injuries suffered by Plaintiff were caused solely and entirely by the negligence and carelessness of the Defendant, their servants, agents and employees, in that the glass shower door was unfit, unsafe and defective in that it was made of untempered and easily shattered glass creating a foreseeable risk of harm to a tenant such as Plaintiff lawfully using the bathroom shower.

(D.I. 5 at 1–2.) In *Hand v. Davis,* Del.Super., C.A. No. 87C–OC–6, 1990 WL 96583 Ridgely, J. (June 8, 1990), Judge Ridgely summarized the law concerning negligence actions against landlords in the State of Delaware:

The duty of the landlord is to maintain the premises in a reasonably safe condition and to undertake any repairs necessary to achieve that end. *Ford v. Ja–Sin,* Del.Super., 420 A.2d 184 (1980). The duty to repair extends to defects the landlord is aware of or should be aware of through inspection of the rental unit. *Loss & Miller, P.A. v. Foulk Road Medical Center, Inc.,* Del.Super., C.A. No. 77C–AU–33, Christie, J. (March 16, 1981).

This Court finds that there is a factual issue as to whether or not the defendant, in not replacing the more than twenty-year old annealed glass, breached its duty to maintain the premises in a reasonably safe condition and to undertake any repairs necessary to achieve that end. In moving for summary judgment, defendant argues that the issue of negligence should be precluded as a matter of law since the use of the annealed glass in the particular building in question was protected by statute, namely New Castle County's incorporation of the BOCA National Building Code § 103.3, which permits the continued use of the glass in buildings constructed before 1970.[6]

■ This Court, nonetheless, finds that a question of fact still exists as to whether or not the standard of care in the real estate rental community is higher than the minimum mandated by the BOCA National Building Code. However, in order to succeed on this negligence claim, the plaintiffs must offer evidence that there was a higher standard of care in the leasing community than that mandated by the BOCA building code regarding pre-existing uses. In effect, plaintiffs must prove that defendant was negligent in continuing to have non-tempered glass in the shower doors in its apartments despite the fact that the code specifically authorized the continued use of such doors and no accidents had been reported in their 20 years of use. The plaintiffs might succeed however, if they presented evidence of an industry practice which replaced glass in intervals of time less than every twenty years, or if they

---

5. 25 *Del.C.* § 5303(a).

6. *See* discussion *supra* at pp. 967–68.

presented evidence of an industry practice which conformed specifically exempted structures to present BOCA code standards in a time less than twenty years, despite the code's "grandfather" clause. To date, however, plaintiffs have presented no such evidence.

In summary, since the plaintiffs have offered no evidence to refute the defendant's claim that it had no statutory duty to replace the glass, and in fact that it was specifically authorized by statute to continue to use the glass, in order to prevail plaintiffs must offer evidence that the standard of care in the leasing community is higher than that mandated by statute.

The plaintiffs have offered evidence in the form of expert testimony that defendant had a duty to perform some type of testing on the more than twenty-year-old glass. Plaintiffs assert that defendant's failure to so test during its routine inspections was negligent. Defendant offered expert testimony that no test other than shattering the glass would be effective. Since the conflicting expert testimony presents a genuine question of fact as to whether defendant's failure to replace the non-tempered glass or to test it for the effects of aging was negligent, the Court will deny defendant's motion for summary judgment on this issue as well.

## IX. CONCLUSION

This Court will grant defendant's motion for summary judgment on the strict liability, breach of warranties for merchantability and fitness for purpose, breach of the warranty of habitability and negligence *per se* claims (Counts Two, Three, Four and Five, respectively). However, the Court finds that the common-law negligence claim presents triable issues of fact, and thus denies summary judgment on that claim (Count One).