[No. G044429. Fourth Dist., Div. Three. Jan. 27, 2012.]

C9 VENTURES, Cross-complainant and Respondent, v.
SVC-WEST, L.P., Cross-defendant and Appellant.

COUNSEL

Jackson Jenkins Renstrom, Gabriel A. Jackson, Diane M. Coe, Christine A. Huntoon and Todd M. Thacker for Cross-defendant and Appellant.

Friedenthal, Heffernan & Klein and Jay D. Brown for Cross-complainant and Respondent.

OPINION

**FYBEL, J.—**

INTRODUCTION

This case could serve as a question on a law school final examination for a course on the Uniform Commercial Code. As in a law school examination, the facts are undisputed. On July 3, 2007, SVC-West, L.P. (SVC), telephoned C9 Ventures (C9) and placed a rush order for eight helium-filled tanks used to inflate festive balloons. C9 accepted the order and later that day delivered the tanks without obtaining a signature on an invoice for them. On the reverse of the invoice was an indemnification provision requiring SVC to indemnify C9 for any loss arising out of the use or possession of the helium-filled tanks. C9 later picked up the tanks, and, weeks later, SVC paid the invoice. SVC had obtained helium-filled tanks from C9 on prior occasions.

After the tanks were delivered on July 3, a boy was injured when one of the helium-filled tanks fell on him. SVC and C9 each paid the boy's family to settle a lawsuit brought to recover for his injuries. C9 filed a cross-complaint against SVC to enforce the indemnification provision on the back of the unsigned invoice.

The question: Is the indemnification provision on the back of the unsigned invoice enforceable against SVC?

The trial court answered the question yes, finding under California Uniform Commercial Code[1] section 2207, the indemnification provision did not materially alter the contract and therefore became an added term. The trial court accordingly granted judgment in favor of C9 and awarded it attorney fees.

---

[1] Further code citations are to the California Uniform Commercial Code.

We answer the question differently and hold the indemnification provision is not binding on SVC. Our complete answer to the question is in parts II. and III. of the Discussion; the summary of our answer is the following. SVC and C9 entered into an oral contract when C9 accepted SVC's telephone order for eight helium-filled tanks. The oral lease was sufficiently definite, although it left open various terms. Under section 2207, on which the trial court relied, additional terms proposed in an acceptance or confirmation may become terms of the contract in certain situations. Section 2207 is part of division 2 of the California Uniform Commercial Code, and division 2 governs transactions in goods. The oral contract between SVC and C9, however, was a *lease* of personal property (the helium-filled tanks), and personal property leases are governed by division 10, not division 2, of the California Uniform Commercial Code.

Division 10 of the California Uniform Commercial Code, which governs the oral contract between SVC and C9, does not have an analog to section 2207. The terms on the back of the unsigned invoice would have become part of the parties' oral contract only if SVC manifested assent to those terms. SVC did not manifest such assent by course of dealing or course of performance, or under basic contract law. SVC did not sign the invoice or otherwise expressly agree to its terms. An unsigned invoice itself is not a contract, and repeated delivery of a particular form does not make the form part of the parties' agreement. Payment of the invoice merely constituted SVC's performance of the obligation under the oral contract to pay for the rental of the helium-filled tanks.

To cover all bases (as one should when answering a law school examination question), we also construe the oral contract between SVC and C9 as if it were a transaction in goods governed by division 2 of the California Uniform Commercial Code and address whether the indemnification provision would have become an additional term under section 2207, as the trial court found. We conclude it would not. If SVC is not a merchant, the terms of the invoice are considered to be mere proposals for additional terms, which SVC did not accept. If SVC is a merchant, the indemnification provision would not have become part of the contract if the provision materially altered the contract. Because an indemnification provision is deemed a material alteration to an agreement as a matter of law, the indemnification provision on the back of the invoice would not, under section 2207, become part of the contract between SVC and C9.

We therefore reverse the judgment and remand with directions to enter judgment in SVC's favor. Because we reverse the judgment on which attorney fees were awarded, we also reverse the order awarding attorney fees.

(*Metropolitan Water Dist. v. Imperial Irrigation Dist.* (2000) 80 Cal.App.4th 1403, 1436 [96 Cal.Rptr.2d 314].)

## FACTS

The trial on C9's cross-complaint was based on an "Agreed Statement of Facts and Evidence for Trial on Cross-complaint of C9 Ventures dba Cloud 9 Balloons." The agreed statement consisted of 46 stipulations of fact and various exhibits.

SVC was in the business of selling time-shares, and had begun using C9 as a provider of event supplies, including helium-filled tanks and balloons, in November 2006. SVC typically placed an order by telephone, and C9 would deliver the supplies with a standard form invoice, which C9 would ask an SVC employee to sign.

The invoice was on a single piece of paper, on the reverse side of which was a section entitled "INDEMNITY/HOLD HARMLESS" (boldface omitted), which stated in part: "Customer agrees to indemnify[,] defend and hold harmless C9 . . . from and against any and all liability, claims, judgments, attorneys fees and cost of . . . every . . . kind and nature, including, but not limited to injuries or death to persons and damage to property, arising out of the use, maintenance, instruction, operation, possession, ownership or Rental & Decor of the items rented, however cause[d], except claims or litigation arising through the solo [*sic*] gross negligence or willful misconduct of C9 . . . ." The reverse side of the invoice also included a section entitled "LEGAL FEES" (boldface omitted), which provided, in essence, that in an action to enforce "this Rental & Decor Agreement," the prevailing party would be entitled to recover attorney fees.

The accident underlying the cross-claim at issue took place on July 3, 2007. Before then, C9 had presented the same or similar invoice to SVC 10 times, but had received the signature of an SVC employee only six times. SVC never attempted to substitute its own form agreement for C9's form.

On July 3, SVC had time-share presentations scheduled for 3:30 p.m. and 5:30 p.m. on the mezzanine of the Crowne Plaza Resort in Garden Grove. In the late morning, Veronica Pasco, an employee of SVC, called C9 for a rush order of eight helium-filled tanks. C9 typically delivered the tanks in the morning when no SVC guests were present, but on July 3, C9's employee, Ernesto Roque, did not arrive at the SVC premises to make the delivery until about 5:00 p.m. Pasco had gone home, so Roque asked another SVC employee, Zayra Renteria, where to place the eight helium-filled tanks.

Renteria, who was expecting the delivery during her shift, instructed Roque to bring the tanks up to the mezzanine level of the resort, at which point she would inform him where to place them. Roque stacked five to seven tanks against the walls next to the service elevator. He was in the process of bringing up another tank when a young boy, whose parents were attending the time-share presentation, ran up to the tanks and hugged one of them, pulling it over. The tank, which was about five feet tall and weighed 130 pounds, fell on the boy's hand. He was hospitalized and underwent surgery for his injuries.

C9 did not obtain a signature from an SVC employee on the invoice for this delivery. Roque wrote the following note on the invoice: "[N]obody would sign [¶] all running around in lobby [¶] nobody knew who . . . . [¶] After accident nobody got signatures." .

The invoice for the helium-filled tanks delivered on July 3 was invoice No. 493, which was submitted for payment by SVC employee Angela Pringle, approved by an SVC manager, and paid by SVC on August 23, 2007. The invoice asked that the top portion, which referred to the invoice number, be returned with payment.

## PROCEDURAL HISTORY

In January 2008, the injured boy and his parents sued SVC and C9 for injuries resulting from the accident. SVC and C9 paid $350,000 each to settle the case. C9 filed a cross-complaint for express indemnity against SVC, claiming the indemnification provision on the back of the July 3 invoice bound SVC to indemnify it for the sum paid to the injured boy's family and for attorney fees. C9 asserted section 2207, which allows merchants to add additional terms through acceptance of an offer or written confirmation, was applicable. SVC argued the terms of the invoice were not binding because it was never signed.

The trial court granted judgment in favor of C9 and explained its reasoning in a minute order stating: "The indemnity provision was contained on the reverse side of an unsigned invoice from C9 delivered with the helium tanks to SVC. [¶] The accident happened on July 3, 2007. During the year before the accident C9 had provided helium tanks and other product[s] to SVC on about 10 occasions. Each time, C9 would provide an invoice with the identical indemnity language. On about half the prior occasions employees of SVC would sign the invoices and on the other occasions the invoices were not signed. SVC never objected to the indemnity language and accepted the

product as it did on the day of the accident. C9 and SVC continued to do business in this manner after the accident as well. [¶] SVC's primary argument is that it never agreed to the indemnity language because the invoice was never signed. However, the Commercial Code has modified traditional concepts of offer and acceptance when the dealings are between merchants. SVC offered to purchase helium tanks for an agreed price. When C9 accepted the offer, it delivered the tanks with an invoice that contained indemnity language. The parties had followed this precise course of conduct multiple times in the past. Com. Code § 2207 provides that an offeree may add additional terms to an offer and those terms are deemed part of the agreement unless the offer expressly limits acceptance to the terms of the offer (which did not occur here) or the new terms materially alter the agreement. [¶] The court finds that the indemnity provision did not materially alter the terms of the agreement. SVC never objected to the language in their prior dealings and it is highly unlikely the helium tanks would have been rejected because the invoice added an indemnity clause. By accepting the goods on this and prior occasions SVC accepted the indemnity clause. Com. Code § 2206 provides that an acceptance can be made in any manner and by any medium reasonable in the circumstances."

Neither SVC nor C9 requested a statement of decision. Before entry of judgment, the trial court granted C9's motion for attorney fees based on the attorney fees provision in the invoice, and awarded $23,955 in fees to C9. The judgment entered in C9's favor incorporated the ruling on the attorney fees motion. SVC timely appealed from the judgment.

DISCUSSION

I.

### SVC Has Not Waived Its Arguments Made for the First Time on Appeal.

C9 argues SVC is limited on appeal to those arguments made in its trial brief and has waived all others. SVC argued in its trial brief only that an unsigned invoice does not constitute a binding contract, and, therefore, an express indemnity contract between SVC and C9 did not exist.

An appellate court ordinarily will not consider arguments made for the first time on appeal. (*Ward v. Taggart* (1959) 51 Cal.2d 736, 742 [336 P.2d 534]; *Ochoa v. Pacific Gas & Electric Co.* (1998) 61 Cal.App.4th 1480, 1488, fn. 3 [72 Cal.Rptr.2d 232].) "The general rule confining the parties upon appeal to

the theory advanced below is based on the rationale that the opposing party should not be required to defend for the first time on appeal against a new theory that 'contemplates a factual situation the consequences of which are open to controversy and were not put in issue or presented at the trial.' [Citation.]" (*Ward v. Taggart, supra,* 51 Cal.2d at p. 742.) This rule does not apply, however, if the new argument raises a pure issue of law on undisputed facts. (*Ibid.; Fort Bragg Unified School Dist. v. Colonial American Casualty & Surety Co.* (2011) 194 Cal.App.4th 891, 907 [124 Cal.Rptr.3d 144]; *Collins v. Department of Transportation* (2003) 114 Cal.App.4th 859, 864–865 [8 Cal.Rptr.3d 132].) On appeal, a party may raise a new issue of law based on undisputed facts (*Phillips v. TLC Plumbing, Inc.* (2009) 172 Cal.App.4th 1133, 1141 [91 Cal.Rptr.3d 864]) and may even "change the legal theory he relied upon at trial, so long as the new theory presents a question of law to be applied to undisputed facts in the record" (*Hoffman-Haag v. Transamerica Ins. Co.* (1991) 1 Cal.App.4th 10, 15 [1 Cal.Rptr.2d 805]).

This case was tried on an agreed statement of stipulated facts and evidence. No testimony was offered at trial. There were no disputed facts, and we resolve any conflicting inferences from the stipulated facts in favor of the judgment. The new arguments raised by SVC are purely legal ones based on the stipulated facts and evidence. We therefore exercise our discretion to consider those arguments.

## II.

### The Indemnification Provision on the Invoice Was Not Part of the July 3, 2007 Oral Contract Between SVC and C9 for the Lease of the Helium-filled Tanks.

#### A. *SVC and C9 Entered into an Oral Contract on July 3, 2007.*

We begin our analysis by addressing whether a contract existed between SVC and C9 for the helium-filled tanks delivered to SVC on July 3, 2007. A contract for the sale of goods may be made "in any manner sufficient to show agreement, including conduct by both parties which recognizes the existence of such a contract." (§ 2204, subd. (1).) Likewise, a personal property lease may be made "in any manner sufficient to show agreement, including conduct by both parties which recognizes the existence of a lease contract." (§ 10204, subd. (a).) In the case of either a contract for the sale of goods or a personal property lease, the offer must be construed as "inviting acceptance in any

manner and by any medium reasonable in the circumstances." (§§ 2206, subd. (1)(a), 10206, subd. (a).)

On July 3, 2007, SVC called C9 to request that it provide eight helium-filled tanks. This constituted an offer to make a contract. C9 orally accepted the offer by agreeing to provide the tanks and delivered them. An SVC employee, who was expecting the delivery, told C9's employee where to place the tanks. Under these facts, an oral contract was formed. SVC's telephone offer and C9's oral acceptance were sufficient to show agreement, and C9's acceptance was reasonable in both manner and medium under the circumstances. As in previous transactions with SVC, C9 delivered the helium-filled tanks with a standard form invoice. That invoice was generated after the contract had been formed and was not signed by SVC. Whether the invoice added terms to the oral contract is addressed in parts II.E., II.F., and III. of the Discussion.

■ This oral contract was sufficiently definite although it left open various terms. Although one or more terms are left open, neither a contract for the sale of goods nor a personal property lease fails for indefiniteness if the parties intended to make a contract and there is a reasonably certain basis for providing an appropriate remedy. (§§ 2204, subd. (3), 10204, subd. (c).) Here, SVC and C9 undoubtedly intended to make a contract by which SVC would pay C9 to provide helium-filled tanks on July 3, 2007. The property to be leased or purchased, the quantity, and the place of delivery were explicitly agreed upon. A reasonably certain basis for remedy would exist if one of the parties breached the agreement.

### B. *The July 3, 2007 Oral Contract Between SVC and C9 Was for the Lease of Helium-filled Tanks.*

Having established there was an oral contract between SVC and C9, we next determine whether it was for the sale of goods or for the lease of personal property. This distinction is significant because sales of goods and leases of personal property are different kinds of transactions and are governed by different divisions of the California Uniform Commercial Code. Division 2, entitled "Sales," governs "transactions in goods." (§ 2102.) Division 10, entitled "Personal Property Leases," applies "to any transaction, regardless of form, that creates a lease." (§ 10102.)

C9 contends division 2 of the California Uniform Commercial Code applies because the oral contract was essentially a sale of helium rather than a rental of tanks; that is, the tanks themselves were merely vessels for transporting the helium. SVC argues division 10 of the California Uniform

Commercial Code applies because "[t]his case did not concern the sale of goods; it concerned a lease of personal property."

■ The contract between SVC and C9 arguably involved both the sale of helium and the rental of the helium-filled tanks. A lease is defined as "a transfer of an interest in goods" and "does not include a sale." (U. Com. Code com., 23C West's Ann. Cal. U. Com. Code (2002 ed.) foll. § 10102, p. 334.) ■ A sale occurs when title passes from seller to buyer for a price. (§ 2106, subd. (1).) SVC had C9's permission to use as much of the helium in the tanks as was needed; C9 therefore relinquished "title" to the helium (to the extent someone can have title to a gas) either upon delivery to SVC or when SVC used the helium gas. But title to the tanks themselves never changed hands. The oral contract anticipated, as in previous transactions, that SVC would return the tanks to C9 when it next made a delivery.

■ We find no legal test to determine whether a *hybrid* transaction involving lease of a vessel *and* sale of its contents is a lease or transaction for the sale of goods. However, in deciding the somewhat analogous question whether a hybrid transaction for goods and services is predominantly a sale of goods governed by the Uniform Commercial Code, or predominantly a transaction for services governed by common law, courts have looked to the essence of the transaction. (*Filmservice Laboratories, Inc. v. Harvey Bernhard Enterprises, Inc.* (1989) 208 Cal.App.3d 1297, 1305 [256 Cal.Rptr. 735]; *Bonebrake v. Cox* (8th Cir. 1974) 499 F.2d 951, 960.) The court may compare the relative cost of the goods and services in the transaction and the purpose of the agreement in order to determine whether it is predominantly a sale of goods or transaction for services. (See *Pittsley v. Houser* (1994) 125 Idaho 820, 823 [875 P.2d 232, 235] [transaction for purchase and installation of carpet predominantly transaction for sale of goods].) "The test for inclusion or exclusion is not whether [goods and services] are mixed, but, granting that they are mixed, whether their predominant factor, their thrust, their purpose, reasonably stated, is the rendition of service, with goods incidentally involved (*e.g.*, contract with artist for painting) or is a transaction of sale, with labor incidentally involved (*e.g.*, installation of a water heater in a bathroom)." (*Bonebrake v. Cox, supra*, 499 F.2d at p. 960, fns. omitted.)

The predominant factor and purpose of the oral contract between SVC and C9 were the lease of helium-filled tanks to SVC. The July 3, 2007 invoice, and prior invoices, specified a flat fee of $65 for each tank provided, regardless of the amount of helium used by SVC to inflate balloons. At the end of the rental period, C9 retrieved the tanks and whatever helium was left

in them. The invoice, and prior invoices, stated: "Title to the Rental & Decor items is and shall remain in . . . C9" and if the "items are not returned and/or levied upon for any reason whatsoever, C9 . . . may retake said items without f[u]rther notice or legal process and use whatever force is reasonably necessary to do so."

The injury out of which C9's claim for indemnification arose was caused by a helium-filled tank, which, without question, was being rented to SVC. The indemnification provision, which C9 seeks to enforce, applied by its terms only to rented items. The invoice itself stated, "[c]ustomer agrees to indemnify[,] defend and hold harmless C9 . . . from and against any and all liability . . . arising out of the use, maintenance, instruction, operation, possession, ownership or Rental & Decor of the *items rented* . . . ." (Italics added.) The invoice did contain a separate section, entitled "TERMS AND CONDITIONS OF SALE" (boldface omitted), but it addressed only warranties.

C9 cannot have its cake and eat it too, demanding indemnification under a clause covering "items rented" while basing its legal arguments on a section of the code inapplicable to leased items. If the injury had been caused by the helium itself rather than the tank, the result might be less clear. The facts show the indemnification provision applied only to rented items, the helium-filled tank was rented, and the injury in question was caused by the tank. We therefore conclude the July 3, 2007 oral contract between SVC and C9 was for the lease of personal property and is governed by division 10 of the California Uniform Commercial Code.

### C. *The Oral Contract for the Lease of Helium-filled Tanks Was Enforceable.*

Under division 10 of the California Uniform Commercial Code, a lease contract is enforceable only if there is a writing signed by the party against whom enforcement is sought or "[i]n a lease contract that is not a consumer lease, the total payments to be made under the lease contract . . . are less than one thousand dollars ($1,000) . . . ." (§ 10201, subd. (a)(1), (2).) A consumer lease is one that "a lessor regularly engaged in the business of leasing or selling makes to a lessee who is an individual and who takes under the lease primarily for a personal, family, or household purpose." (§ 10103, subd. (a)(5).)

The oral contract between SVC and C9 was not a consumer lease because SVC did not rent the helium-filled tanks for a personal, family, or household purpose. Although the lease was not memorialized by a writing signed by SVC, the amount to be paid was less than $1,000 (the July 3 invoice is in the

amount of $520). The oral lease contract therefore was enforceable despite the lack of a writing.

### D. *Section 2207 Does Not Apply to a Personal Property Lease.*

■ The trial court relied on section 2207, part of division 2 of the California Uniform Commercial Code, as the basis for its finding the indemnification provision of the invoice bound SVC. Section 2207, which applies to transactions in goods between merchants, states, "[a] definite and seasonable expression of acceptance or a written confirmation which is sent within a reasonable time operates as an acceptance even though it states terms additional to or different from those offered or agreed upon, unless acceptance is expressly made conditional on assent to the additional or different terms." (§ 2207, subd. (1).) Section 2207 creates an exception to the traditional common law requirement that acceptance must mirror the terms of the offer in order to bind the offeror. (*Steiner v. Mobil Oil Corp.* (1977) 20 Cal.3d 90, 99 [141 Cal.Rptr. 157, 569 P.2d 751].) Division 10 of the California Uniform Commercial Code, which applies to personal property leases, has no provision similar in language or effect to section 2207.

Courts have generally declined to apply division 2 of the California Uniform Commercial Code, or its analogy as adopted in other jurisdictions, if the transaction in question is a lease rather than a sale of goods. (E.g., *Miley v. Harmony Mill Ltd. Partnership* (D.Del. 1992) 803 F.Supp. 965, 968; *Technicon Instruments Corp. v. Pease* (Mo.Ct.App. 1992) 829 S.W.2d 489, 490–491 ["Lease transactions are not governed by Article Two of the [Uniform Commercial] Code"]; *Prime Financial Group, Inc. v. Masters* (1996) 141 N.H. 33, 36 [676 A.2d 528, 531] ["we note that the provisions of article 2 of the [Uniform Commercial Code], dealing with sales of goods, do not apply to this case because the trial court specifically found that the contract at issue was a true lease and not a contract for the sale of goods"]; *Skinner v. Turner* (1986) 30 Ohio App.3d 232, 234 [30 Ohio B. 390, 507 N.E.2d 392, 394–395] [". . . Ohio's version of Article 2 of the Uniform Commercial Code . . . is inapplicable to . . . a lease agreement of limited duration where the lessor specifically retains title to the subject matter of the lease"].) Courts which have extended article 2 of the Uniform Commercial Code to leases have done so only when the lease was analogous to or the functional equivalent of a sale and only in the case of extending warranties for public policy reasons. (See *American Family Mutual Ins. Co. v. Jepson* (8th Cir. 1998) 148 F.3d 954, 956 [installment purchase a sale despite contract labeled "lease"]; *Hornberger v. General Motors Corp.* (E.D.Pa. 1996)

929 F.Supp. 884, 887 [five-year automobile lease analogous to a sale, so warranty provisions applicable to sales apply]; *W. E. Johnson Equipment Co. v. United Airlines, Inc.* (Fla. 1970) 238 So.2d 98, 99–100 [extending warranty of fitness to cover leased goods]; *Cucchi v. Rollins Protective Services Co.* (1988) 377 Pa.Super. 9, 28 [546 A.2d 1131, 1140–1141] [express warranty provisions of article applied to leases of goods], revd. on other grounds (1990) 524 Pa. 514, 526 [574 A.2d 565, 571].)

In this case, the oral contract between SVC and C9 was not analogous to or the functional equivalent of a sale. Thus, division 2, including section 2207, of the California Uniform Commercial Code does not apply to that contract. Instead, we determine whether the indemnity provision is enforceable under division 10 of the California Uniform Commercial Code.

E. *The Indemnification Provision of the Unsigned Invoice Did Not Become Part of the Oral Contract to Lease the Helium-filled Tanks Under Course of Performance or Course of Dealing.*

The express terms of the July 3, 2007 oral contract between SVC and C9 for the lease of eight helium-filled tanks did not include an indemnification provision. The unsigned invoice, confirming the oral contract, included the indemnification provision C9 seeks to enforce. Did the terms of the invoice become part of the oral contract between SVC and C9 for the lease of the helium-filled tanks?

We hold the indemnification provision in the invoice did not become part of the contract. The terms of the invoice were not incorporated into the contract under a course of performance or course of dealing analysis for the following reasons.

The California Uniform Commercial Code provides that "[a] course of performance or course of dealing between the parties . . . is relevant in ascertaining the meaning of the parties' agreement, may give particular meaning to specific terms of the agreement, and may supplement or qualify the terms of the agreement." (§ 1303, subd. (d).) A " 'course of perfor-mance' " exists when "the agreement of the parties with respect to the transaction involves repeated occasions for performance by a party." (§ 1303, subd. (a)(1).) A " 'course of dealing,' " on the other hand, requires "a sequence of conduct concerning previous transactions between the parties to a particular transaction that is fairly to be regarded as establishing a common

basis of understanding for interpreting their expressions and other conduct." (§ 1303, subd. (b).)

### 1. *Course of Performance*

■ Course of performance is governed by the general provisions of the California Uniform Commercial Code contained in section 1303. Section 1303's course of performance analysis applies only where "the agreement of the parties with respect to the transaction involves repeated occasions for performance by a party . . . ." (§ 1303, subd. (a)(1).)

A course of performance did not exist in this case because the agreement in issue here—the July 3, 2007 oral contract for the eight helium-filled tanks— did not involve repeated occasions for performance. The oral contract was a single agreement created when C9 accepted SVC's offer to rent helium-filled tanks on that date. The tanks were delivered to SVC, retrieved by C9, and paid for by SVC at a later date. There were no other occasions for performance of the oral contract, and there were never in the course of the relationship between SVC and C9 any occasions for performance of the terms on the back of the invoices.

Each prior transaction in which SVC rented helium-filled tanks from C9 constituted a separate, individual contract that was created by a separate telephone offer and acceptance by C9 for which a separate invoice was generated. Each prior transaction cannot be said to be part performance of a long-term or master contract covering all of SVC's rentals of helium-filled tanks from C9, and there was no evidence of such a contract between SVC and C9. There was not, for example, a " 'requirements contract' " by which C9 agreed to " 'furnish all goods of a certain kind which the other party may *need* or require in a certain business for a definite period.' " (*Fisher v. Parsons* (1963) 213 Cal.App.2d 829, 834 [29 Cal.Rptr. 210].) Performance on prior occasions based on different agreements to rent helium-filled tanks did not establish a course of performance creating additional terms to the July 3, 2007 oral contract.

### 2. *Course of Dealing*

As for course of dealing, SVC and C9 engaged in a sequence of conduct involving previous instances in which SVC rented helium-filled tanks. Before July 3, 2007, C9 and SVC entered into 10 such transactions in which C9 provided an invoice with identical terms, including the indemnification provision, on the back. On six of those 10 occasions, an SVC employee

signed the invoice. That means, of course, on four of those 10 occasions, an SVC employee did not sign the invoice. The question is whether these facts establish, in the statute's words, "a common basis of understanding" with respect to the indemnification provision on the back of C9's July 3, 2007 invoice. (§ 1303, subd. (b).)

"An inference of the parties' common knowledge or understanding that is based upon a prior course of dealing is a question of fact." (*In re CFLC, Inc.* (9th Cir. 1999) 166 F.3d 1012, 1017 (*CFLC*).) We review findings of fact under a substantial evidence standard of review. (*Haraguchi v. Superior Court* (2008) 43 Cal.4th 706, 711 [76 Cal.Rptr.3d 250, 182 P.3d 579].) Here, the trial court's minute order stated judgment for C9 was based on section 2207, which we have concluded does not apply to the oral contract between SVC and C9. However, no party requested a statement of decision, and, absent a statement of decision, "[t]he doctrine of implied findings requires the appellate court to infer the trial court made all factual findings necessary to support the judgment." (*Fladeboe v. American Isuzu Motors Inc.* (2007) 150 Cal.App.4th 42, 58–59 [58 Cal.Rptr.3d 225].)

Thus, we infer the trial court made an implied finding SVC and C9 engaged in a course of dealing fairly to be regarded as establishing a common basis of understanding, and review that implied finding for substantial evidence. (*Fladeboe v. American Isuzu Motors Inc., supra*, 150 Cal.App.4th at pp. 59–60.) We conclude substantial evidence supports a finding that SVC engaged in a course or pattern of conduct with each transaction, but substantial evidence does not support a finding such course or pattern of conduct established a course of dealing by which SVC and C9 commonly understood the indemnification provision on the back of the invoice would be part of their contract.

 The evidence established only the common understanding that with each delivery of helium-filled tanks, C9 would present an invoice and request a signature. We may infer C9 requested a signature from SVC as a manifestation of its assent to the terms of the invoice. Six times SVC signed, four times it did not. Those facts do not support an inference that SVC understood the terms on the back of the invoice would be a common basis of understanding for every transaction with C9.

An analogous case is *CFLC, supra*, 166 F.3d 1012. In that case, the Ninth Circuit of the United States Court of Appeals concluded an invoice did not add terms to a contract under the California Uniform Commercial Code because "[c]ourse of dealing analysis is not proper in an instance where the

only action taken has been the repeated delivery of a particular form by one of the parties." (*CFLC, supra,* at p. 1017.) Adopting the reasoning of the Third Circuit Court of Appeals in *Step-Saver Data Systems, Inc. v. Wyse Technology* (3d Cir. 1991) 939 F.2d 91 (*Step-Saver*), the *CFLC* court refused to extend course of dealing analysis "to a situation where the parties had not previously taken any action with respect to the matters addressed by the disputed terms." (*CFLC, supra,* at p. 1017.) The court concluded, "the repeated exchange of forms merely indicated the seller's desire to have these terms included" because "[t]he failure to obtain the purchaser's express assent to those terms indicates the seller's agreement to do business on other terms—those expressly agreed upon by the parties." (*Ibid.*)

F. *The Indemnification Provision Did Not Become Part of the Oral Contract to Lease Helium-filled Tanks Under Principles of Contract Law.*

Division 10 of the California Uniform Commercial Code does not include a section similar to section 2207, permitting the addition of terms to a contract by means of an acceptance or written confirmation. Thus, unlike division 2 of the California Uniform Commercial Code, division 10 in itself provides no basis for incorporating the indemnification provision on the back of the invoice into the oral contract between SVC and C9 to rent helium-filled tanks.

Under common law principles, SVC could have assented to the terms on the back of the invoice by signing it or manifesting assent in some other way. SVC did not, however, sign the July 3 invoice. "[U]nder the common law, '[s]ilence in the face of an offer is not an acceptance, unless there is a relationship between the parties or a previous course of dealing pursuant to which silence would be understood as acceptance.' [Citation.]" (*CFLC, supra,* 166 F.3d at p. 1018, quoting *Southern Cal. Acoustics Co. v. C. V. Holder, Inc.* (1969) 71 Cal.2d 719, 722 [79 Cal.Rptr. 319, 456 P.2d 975].) As discussed above, no course of dealing existed that would allow us to treat SVC's silence as acceptance. SVC did not sign the invoice on four of the 10 occasions before July 3, 2007, on which C9 presented an invoice to SVC.

SVC did pay the invoice. The stipulation of facts presented at trial included the fact that "invoice #493, dated July 3, 2007, was submitted for payment by SVC employee, Angela Pringle, and approved by a manager. SVC paid the invoice on August 23, 2007. There was no discussion between SVC and [C]9 of the terms on the reverse side of the document before the [underlying]

lawsuit was filed." Did approval and payment of the invoice constitute acceptance of the indemnification provision?

■ A provision on a form agreement signed by the party against whom enforcement is sought is binding even if the party was unaware of the provision. (*N.A.M.E.S. v. Singer* (1979) 90 Cal.App.3d 653, 656 [153 Cal.Rptr. 472].) "A party cannot avoid the terms of a contract on the ground that he or she failed to read it before signing. [Citations.]" (*Marin Storage & Trucking, Inc. v. Benco Contracting & Engineering, Inc.* (2001) 89 Cal.App.4th 1042, 1049 [107 Cal.Rptr.2d 645] (*Marin*).) Unsigned invoices, however, cannot on their own create a contract or add terms to a contract. "The prevailing rule is that an invoice, standing alone, is not a contract [citations]; and a buyer is ordinarily not bound by statements thereon which are not a part of the original agreement." (*India Paint Co. v. United Steel Prod. Corp.* (1954) 123 Cal.App.2d 597, 607 [267 P.2d 408].) "After the orders were placed the seller transmitted certain invoices on which it attempted to place certain additional covenants into the contract. Such additions were mere self-serving declarations on the part of the seller and were not binding on the purchasers." (*Kocher v. Cartman Tire Exchange* (1930) 108 Cal.App. 619, 620 [291 P. 856].) "An invoice, as such, is no contract." (*Tanenbaum Textile Co. v. Schlanger* (1942) 287 N.Y. 400, 404 [40 N.E.2d 225, 226].)

Payment of an invoice with terms different from those of the oral contract also does not constitute acceptance of additional terms. The Ninth Circuit Court of Appeals has concluded an invoice does not modify an oral contract even if the party against whom enforcement of those terms is being sought has repeatedly paid on the invoices. (*Chateau des Charmes Wines Ltd. v. Sabate USA Inc.* (9th Cir. 2003) 328 F.3d 528 (*Chateau des Charmes*).) In *Chateau des Charmes*, the plaintiff, a winery, agreed by telephone with the defendant, a manufacturer of special wine corks, to purchase a certain number of corks at a specific price. (*Id.* at p. 529.) For each shipment of corks, the defendant sent an invoice stating (in French) the sole jurisdiction for " '[a]ny dispute arising under the present contract' " would be in France. (*Ibid.*) After the corks tainted the plaintiff's wine, the plaintiff sued the defendant in federal district court in California for breach of contract, among other things. (*Id.* at pp. 529–530.)

The district court dismissed the complaint based on the forum selection clause, finding it was part of the contract between the parties. (*Chateau des Charmes, supra,* 328 F.3d at p. 529.) The Ninth Circuit reversed. (*Ibid.*) It concluded mere acceptance and payment of the invoices containing the forum selection clause did not constitute assent to the clause as an additional term of

the contract. (*Id.* at p. 531.) "There is no indication that [the plaintiff] conducted itself in a manner that evidenced any affirmative assent to the forum selection clauses in the invoices. Rather, [the plaintiff] merely performed its obligations under the oral contract." (*Ibid.*)

The contract in *Chateau des Charmes* was subject to the United Nations Convention on Contracts for the International Sale of Goods (CISG; 52 Fed.Reg. 6262 (Mar. 2, 1987); 15 U.S.C. Appen.). The Ninth Circuit stated, "[n]othing in the [CISG] suggests that the failure to object to a party's unilateral attempt to alter materially the terms of an otherwise valid agreement is an 'agreement' within the terms of Article 29 [of the CISG]." (*Chateau des Charmes, supra,* 328 F.3d at p. 531.) Division 10 of the California Uniform Commercial Code likewise does not include a provision suggesting failure to object to additional terms contained in an invoice may constitute acceptance of those terms. Section 2207 does address additional terms included in a written confirmation of acceptance, such as an invoice, but section 2207 applies only to transactions in goods, not leases of personal property, and, as we shall conclude, under section 2207, the indemnification provision did not become a term of the contract between SVC and C9.

In *Comerica Bank v. Whitehall Specialties, Inc.* (C.D.Cal. 2004) 352 F.Supp.2d 1077, 1082–1083, the court refused to apply the rule from *Chateau des Charmes* to a case governed by the California Uniform Commercial Code. Instead, the court in *Comerica Bank* relied on the course of performance provision contained in former section 2208, which was repealed in 2006. (*Comerica Bank, supra,* at p. 1083; see Historical and Statutory Notes, 23A pt. 1 West's Ann. Cal. U. Com. Code (2012 supp.) foll. § 2208, p. 74.) Former section 10207, the analogous provision in division 10 of the California Uniform Commercial Code, was also repealed in 2006. (See Historical and Statutory Notes, 23C West's Ann. Cal. U. Com. Code, *supra,* foll. § 10207, p. 19.)

We agree with the reasoning of *Chateau des Charmes* and conclude that payment on an invoice in accordance with an existing oral contract does not in itself establish assent to the addition of terms to the contract. For a party's performance to establish assent to a modification or addition of terms, the performance must be related to the proposed modification or addition and differ from the performance already required of the party by the existing contract. SVC acted in the manner required by the oral contract and took no additional steps constituting acceptance of the indemnification provision on the invoice. Such performance did not manifest assent to the invoice's conditions, but merely constituted performance of the previous oral contract between the parties. Absent such assent, the invoice did not modify the existing oral contract.

Relying on *Marin, supra*, 89 Cal.App.4th 1042, C9 argues the indemnity provision on the back of the invoice is binding because SVC is deemed to have been aware of it. Reliable Crane & Rigging (Reliable), the cross-complainant in *Marin*, was in the business of leasing industrial cranes. (*Id.* at p. 1046.) Over time, the parties had established a procedure by which the cross-defendant, Benco Contracting and Engineering, Inc. (Benco), arranged by telephone to have Reliable provide a crane and crane operator for specified dates, and, at the end of each day, the crane operator would prepare a form indicating the number of hours worked and present the form to Benco's supervising employee, who would verify the number of hours and sign the form. (*Id.* at pp. 1046–1047.) On the back of the form was an indemnification provision. (*Id.* at p. 1047.) Reversing judgment in Benco's favor, the Court of Appeal held the form signed by Benco's employee, including the indemnification provision, constituted an enforceable contract. (*Id.* at pp. 1052, 1056.) The *Marin* court stated: "By its conduct in paying the invoices generated from the Work Authorization and Contract forms, Benco acknowledged the existence of a contract. There is simply no basis for a conclusion that the document was unrecognizable as a binding contract." (*Id.* at p. 1050.)

*Marin* does not stand for the proposition that a party is bound by the terms of an unsigned invoice by paying it. Most strikingly in *Marin*, unlike this case, the form including the indemnification provision was signed by Benco's employee. The issue presented was whether the form fell into an exception to the rule that one who signs a contract is deemed to assent to its terms. (*Marin, supra*, 89 Cal.App.4th at pp. 1049–1050.) The *Marin* court found the exception did not apply because the document was labeled "Work Authorization and Contract" and referred on its front to the indemnification terms on the back. (*Id.* at p. 1050.) Whether that rule or the exception applies to this case is not an issue here because SVC did not sign the July 3, 2007 invoice. *Marin* was not decided under the California Uniform Commercial Code, even though a portion of the contract was for a lease of personal property. The court examined the parties' prior conduct and course of dealings, not to determine whether the form constituted an agreement, but to interpret its terms. (*Marin, supra*, at p. 1051.)

### III.

### Under Section 2207, the Indemnification Provision Was Not Part of the Oral Contract Between SVC and C9.

The trial court relied on section 2207, subdivision (2) to reach the conclusion the indemnification provision on the back of the invoice was part of the contract between SVC and C9. We have concluded the contract

between SVC and C9 was for the rental of helium-filled tanks. Section 2207 applies only to the sale of goods, and division 10 of the California Uniform Commercial Code, which governs personal property leases, does not have a provision similar to section 2207. Nonetheless, we address whether, even under section 2207, the indemnification provision would have become a term of the contract between SVC and C9.

 Under section 2207, parties may conclude a contract for the sale of goods even when the forms they exchange to memorialize the agreement have different terms. Subdivisions (1) and (2) of section 2207 read: "(1) A definite and seasonable expression of acceptance or a written confirmation which is sent within a reasonable time operates as an acceptance even though it states terms additional to or different from those offered or agreed upon, unless acceptance is expressly made conditional on assent to the additional or different terms. [¶] (2) The additional terms are to be construed as proposals for addition to the contract. Between merchants such terms become part of the contract unless: [¶] (a) The offer expressly limits acceptance to the terms of the offer; [¶] (b) They materially alter it; or [¶] (c) Notification of objection to them has already been given or is given within a reasonable time after notice of them is received."

Section 2207 "establishes a legal rule that proceeding with a contract after receiving a writing that purports to define the terms of the parties'[] contract is not sufficient to establish the party's consent to the terms of the writing to the extent that the terms of the writing either add to, or differ from, the terms detailed in the parties'[] earlier writings or discussions. In the absence of a party's express assent to the additional or different terms of the writing, section 2-207 provides a default rule that the parties intended, as the terms of their agreement, those terms to which both parties have agreed, along with any terms implied by the provisions of the [Uniform Commercial Code]." (*Step-Saver, supra,* 939 F.2d at p. 99, fns. omitted.)

When both parties to the transaction are "merchants,"[2] the additional terms in the acceptance or written confirmation automatically become part of the contract unless (1) the offer expressly limits acceptance to the terms of the offer, (2) the additional terms materially alter the contract, or (3) the other party has objected to the additional terms or objects to them within a reasonable time after receiving the acceptance or confirmation. (§ 2207, subd. (2).)

---

[2] " 'Merchant' means a person who deals in goods of the kind or otherwise by his occupation holds himself out as having knowledge or skill peculiar to the practices or goods involved in the transaction or to whom such knowledge or skill may be attributed by his employment of an agent or broker or other intermediary who by his occupation holds himself out as having such knowledge or skill." (§ 2104, subd. (1).)

SVC and C9 made an oral contract for SVC to rent helium-filled tanks from C9 on July 3, 2007.[3] That contract became enforceable at the point when C9 delivered the helium-filled tanks and SVC had a reasonable time to inspect them. (§ 2201, subds. (1), (3)(c).) Even assuming the oral contract was for the sale of goods, such that section 2207 would apply, the invoice constituted a written confirmation of the agreement and made proposals for additional terms, including the indemnification provision, which differed from the parties' oral contract.

If SVC is not considered to be a merchant, those additional terms would be construed as proposals for additions to the contract and would become part of the agreement only if SVC expressly assented to them. (See U. Com. Code com., 23A pt. 1 West's Ann. Cal. U. Com. Code (2002 ed.) foll. § 2207, p. 219 ["Under this Article a proposed deal which in commercial understanding has in fact been closed is recognized as a contract. Therefore, any additional matter contained in the confirmation . . . falls within subsection (2) and must be regarded as a proposal for an added term unless the acceptance is made conditional on the acceptance of the additional or different terms"].)

Substantial evidence would not support a finding, express or implied, that SVC expressly assented to the additional terms proposed in the invoice. SVC did not sign the invoice four of the 10 times in which it ordered helium-filled tanks from C9 before July 3, 2007. SVC did not sign the invoice for the July 3, 2007 helium-filled tank order and did not otherwise communicate to C9 an assent to the additional terms proposed in the invoice. Payment of the invoice did not constitute assent to its proposed additional terms because payment is deemed to be performance of SVC's obligation under the oral contract to pay for the helium-filled tanks. (*Chateau des Charmes, supra*, 328 F.3d at p. 531.) C9's repeated use in the past of invoices with the same indemnification provision, without express objection from SVC, does not constitute a course of dealing or assent to the terms of the invoice. (*CFLC, supra*, 166 F.3d 1012, 1017 [sending preprinted invoices claiming a general lien for unpaid charges and expenses does not constitute a course of dealing]; *Step-Saver, supra*, 939 F.2d at pp. 103–104; *Diskin v. J.P. Stevens & Co., Inc.* (1st Cir. 1987) 836 F.2d 47, 51 ["mere *use* of the same ineffective form of contract is not the functional equivalent of evidence which affirmatively establishes a party's prior consent" to the disputed provision]; *Maxon Corp. v. Tyler Pipe Industries, Inc.* (Ind.Ct.App. 1986) 497 N.E.2d 570, 575–576 [repeated use of same forms does not imply parties' awareness or assent to terms]; see also 1 White & Summers, Uniform Commercial Code (5th ed. 2006) § 3-3, p. 192 ["the mere sending of terms back and forth does not, without more, create a

---

[3] "A contract for sale of goods may be made in any manner sufficient to show agreement, including conduct by both parties which recognizes the existence of such a contract." (§ 2204, subd. (1).)

course of dealing"]; see also *Transwestern Pipeline Co. v. Monsanto Co.* (1996) 46 Cal.App.4th 502, 517–518 [53 Cal.Rptr.2d 887] [citing *Step-Saver* with approval].)

If SVC is considered to be a merchant, however, the additional terms of the invoice, including the indemnification provision, would become terms of the contract unless they materially altered the contract or SVC objected to them. (There is no dispute that the offer did not expressly limit acceptance to the terms of the offer.) There is no evidence SVC ever objected to the terms of the July 3, 2007 invoice within a reasonable time of receiving it, so the issue would be whether the indemnification provision materially altered the terms of the parties' oral contract.

A clause that would materially alter the contract is one which "result[s] in surprise or hardship if incorporated without express awareness by the other party." (U. Com. Code com., 23A pt. 1 West's Ann. Cal. U. Com. Code, *supra*, foll. § 2207, p. 219.)

In this case, the trial court found the indemnification provision on the reverse side of the invoice did not materially alter the terms of the agreement.[4] That finding is legally erroneous. An indemnification provision would constitute a material alteration, as a matter of law, to the oral contract between SVC and C9. In *Trans-Aire International, Inc. v. Northern Adhesive Co.* (7th Cir. 1989) 882 F.2d 1254, 1256, 1260, the plaintiff placed 12 separate telephone orders to purchase an adhesive from the defendant and confirmed each order with a purchase order containing an indemnity clause. The plaintiff sued the defendant to enforce the indemnity clause after the adhesive damaged the interiors of the recreational vehicles in which it had been used. (*Id.* at pp. 1256–1257.) The district court, granting summary judgment in the defendant's favor, found as a matter of law the indemnity provision materially altered the terms of the parties' agreement. (*Id.* at p. 1261.) The Seventh Circuit Court of Appeals agreed, concluding "the indemnification clause clearly imposes an unreasonable hardship upon [the defendant] which should not be enforced without evidence of mutual assent to that term." (*Id.* at p. 1262.)

The Seventh Circuit reasoned an indemnity clause has the same effect as a provision disclaiming or excluding warranties, which is "regularly characterized as a material alteration as a matter of law." (*Trans-Aire International, Inc. v. Northern Adhesive Co., supra*, 882 F.2d at p. 1263.) The court

---

[4] The trial court also found SVC was neither surprised by nor unaware of the indemnification provision because the same invoice had been used on 10 prior occasions. The test is not whether SVC was aware of the indemnification provision but whether it "materially alter[ed]" the parties' agreement. (§ 2207, subd. (2)(b).)

explained: "An indemnification clause, like a warranty disclaimer, relieves a party of otherwise well-established legal duties and obligations. Clearly, a shift in legal liability which has the effect of relieving one party of the potential for significant economic hardship and placing this burden upon another party is an important term in any contract. Thus, it is not surprising that such a term, if it is to be included in a contract, is ordinarily the subject of active negotiation between parties. We therefore do not believe that a party charged with legal duties and obligations may reasonably rely upon a boilerplate clause in a boilerplate form and a corresponding operation of law to shift substantial economic burdens from itself to a nonassenting party when it had every opportunity to negotiate such a term if it desired." (*Ibid.*)

■ Other courts also have reached the conclusion an indemnity provision constitutes a material alteration of an agreement. (*Union Carbide Corp. v. Oscar Mayer Foods Corp.* (7th Cir. 1991) 947 F.2d 1333, 1337–1338; *St. Charles Cable TV, Inc. v. Eagle Comtronics, Inc.* (S.D.N.Y. 1988) 687 F.Supp. 820, 828; *Resch v. Greenlee Bros. & Co.* (Ct.App. 1985) 128 Wis.2d 237 [381 N.W.2d 590]; *Power Press Sales Co. v. MSI Battle Creek Stamping* (1999) 238 Mich.App. 173, 181 [604 N.W.2d 772, 776]; see also *Palmer G. Lewis Co. v. Arco Chemical Co.* (Alaska 1995) 904 P.2d 1221, 1230 ["we have found no case where an indemnity clause was held to be 'immaterial' under section 2-207" of the U. Com. Code].) We agree with these opinions and conclude an indemnity provision constitutes a material alteration of an agreement.

Again relying on *Marin, supra*, 89 Cal.App.4th 1042, C9 argues the indemnification provision on the back of the invoice did not alter the terms of the contract because the invoice was the contract. As we have explained, *Marin* is inapposite because in that case, unlike here, the form was signed by Benco's employee. *Marin* was not decided under the California Uniform Commercial Code and did not mention section 2207.

■ Because the indemnification provision would have materially altered the terms of the oral contract between SVC and C9, the provision did not become part of their contract under section 2207. A party to an agreement can decide nonetheless to accept the additional term, even if it modifies the agreement. Such acceptance may be made expressly or "from silence, in the face of a course of dealings that makes it reasonable for the other party to infer consent from a failure to object." (*Union Carbide Corp. v. Oscar Mayer Foods Corp., supra*, 947 F.2d at p. 1336.) As we have explained, SVC did not expressly accept the additional terms on the back of the invoice, payment on the invoice did not constitute assent to its additional terms, and past use of the invoice did not constitute assent or a course of dealing from which assent can be inferred.

## DISPOSITION

The judgment, including the award of attorney fees to C9, is reversed and the matter is remanded with directions to enter judgment in SVC's favor. Appellant to recover costs incurred on appeal.

Bedsworth, Acting P. J., and O'Leary, J., concurred.